**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Maxwell Little, et al., | |
| Plaintiffs, | No. 1:18-CV-06954 |
| v. | Honorable Virginia M. Kendall |
| JB Pritzker for Governor, et al., | |
| Defendants. | |

**DEFENDANT JB PRITZKER FOR GOVERNOR'S
<u>MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AND DISMISS SECOND
AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ..................................................................................................... 4

     A.     MOTION TO STRIKE .......................................................................... 4

     B.     MOTION TO DISMISS ........................................................................ 5

          1.     Legal standard ............................................................................ 5

          2.     The Complaint does not allege plausible claims for relief ....................... 5

               a.     The Complaint fails to allege facts about most Plaintiffs' employment.................................................................... 5

               b.     Plaintiffs do not plausibly allege racial discrimination................. 6

               c.     Plaintiffs do not plausibly allege racial harassment.................... 10

               d.     Plaintiffs do not plausibly allege retaliation ............................. 12

          3.     The Court's dismissal should be with prejudice ...................................... 15

IV.   CONCLUSION................................................................................................... 15

124717-0003/142578420.1

## I.      INTRODUCTION

JB Pritzker for Governor (the "Campaign") moves under Rules 12(f) and 12(b)(6) of the Federal Rules of Civil Procedure to strike parts of the Second Amended Complaint ("Complaint") and dismiss all claims against the Campaign. *See* Compl., ECF No. 28.

Plaintiffs filed this suit just before a hotly contested election and immediately gave it to the press. But Plaintiffs never served the Campaign—even though counsel agreed to accept service on October 15 and asked on October 19 that Plaintiffs' counsel serve the lawsuit or dismiss it if they did not intend to proceed. Instead, Plaintiffs filed an amended complaint on Election Day, and then moved to amend again rather than respond to the defects the Campaign identified in the prior complaint. After the Court granted Plaintiffs leave to file their proposed second amended complaint, Plaintiffs in fact filed a different version. *Compare* Prop. SAC, ECF No. 21, *with* Compl. All told, Plaintiffs have put forth four complaints—all deficient.

As with the prior three complaints, this Complaint is full of sweeping legal conclusions, overheated rhetoric, and rank speculation, but still does not contain factual allegations showing that Plaintiffs' claims for relief are plausible. As to most Plaintiffs, the Complaint contains no well-pleaded factual allegations of any kind. As to all Plaintiffs, while the Complaint alleges race discrimination, it contains no factual allegation that any Plaintiff has been subject to an adverse action because of his or her race. The Complaint alleges a race-based hostile work environment but falls far short of alleging plausibly that any Plaintiff was subject to severe or pervasive harassment because of his or her race. Finally, the Complaint alleges retaliation but contains no factual allegations showing that (a) any Plaintiff was subject to an adverse action after engaging in protected activity or (b) that retaliatory animus motivated any such action.

124717-0003/141747821.1

There is a reason for this—Plaintiffs' claims are baseless. The truth is that Plaintiffs' accusations of race discrimination focus on supervisors who are African American and members of Campaign leadership—roughly half of whom are people of color—and Plaintiffs litter the Complaint with mischaracterizations and falsehoods. Of course, on this motion, the Court takes Plaintiffs' well-pleaded factual allegations as true. But after four tries, Plaintiffs still have not set out plausible claims. The Court should grant the Campaign's motion and dismiss with prejudice.

## II.    BACKGROUND

JB for Governor is a political committee that was devoted to electing Democrat JB Pritzker the governor of Illinois and Juliana Stratton the lieutenant governor. *See generally* Compl. ¶ 4. Consistent with Mr. Pritzker's and Ms. Stratton's values, the Campaign is deeply committed to equal opportunity. For the Campaign, equal opportunity is not just a legal requirement; it is a basic organizational value reflected in its staff, volunteers, and workplace.

Plaintiffs are 12 former Campaign employees. Each Plaintiff alleges under 42 U.S.C. § 1981 ("Section 1981") that he or she was subject to (1) race-based harassment; (2) racial discrimination; and (3) retaliation. *Id.* ¶¶ 56-65. Although Plaintiffs bring individual claims, the Complaint says little about each Plaintiff.[1] Plaintiffs briefly describe each organizer and his or her resume. *Id.* ¶ 3(a)-(j). This is the *only* mention of six of the 12 Plaintiffs: Jason Benton, Jelani Coleman, Erica Kimble, Nathaniel Madison, James Tinsley, and Mark Walker. And as to their employment *generally*, Plaintiffs assert only that the Campaign placed five of them on paid administrative leave after they filed this lawsuit, pending an investigation. *Id.* ¶¶ 52-53.

With regard to Celia Colón, Plaintiffs allege that during a "mandatory cultural sensitivity

---

[1] For this motion only, the Campaign treats all well-pleaded factual allegations as true. *See, e.g.*, *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (on 12(b)(6) motion, courts "accept the well-pleaded facts in the complaint"—but not "legal conclusions and conclusory allegations"—"as true").

training on September 12, 2018," *id.* ¶ 29, "[w]hen Celia tried to ask a question, the training director instructed the person with the microphone not to give it to her," *id.* ¶ 35. Plaintiffs provide no other details; they do not allege that this had anything to do with Ms. Colón's race as opposed to, by way of example, that the presentation had already run an hour late.

For Kasmine Calhoun, Plaintiffs allege that Ms. Calhoun was assigned to Peoria, the Campaign arranged for her to stay with a private family, the family "denied her housing" after it "found out" she "was Black," and the Campaign then booked her a hotel room. *Id.* ¶¶ 12-18. Plaintiffs allege that Ms. Calhoun resigned because she believed the "hotel was in an unsafe part of town" and the Campaign told her that it had a "financial budget" and so she would need to "make due" rather than try to "request cheaper rates at safer hotels." *Id.* ¶¶ 17-19. Ms. Calhoun does not allege that the Campaign paid for more expensive hotels for other employees (African American or otherwise) or that the Campaign's hotel bookings were motivated by racial animus.

As to Maxwell Little, Plaintiffs allege that he "complained" a week after the sensitivity training, *id.* ¶ 39, and also "complained" with at least some other Plaintiffs "[i]mmediately" after the training, *id.* ¶ 38. Plaintiffs allege that the Campaign responded to Mr. Little's "complaint" by holding a conference call with Campaign leadership during which Campaign Manager Anne Caprara[2] explained that the Campaign had investigated the incident and reprimanded Ebonee Dawson for asking the organizers she supervised to not "say anything stupid" during the training. *Id.* ¶ 40. Plaintiffs then offer a nonsequitur—bemoaning that the Campaign "completely ignored" their complaints while also acknowledging that the Campaign addressed those complaints—and dismiss the Campaign's response as "superficial and meaningless." *See id.* ¶¶ 37-41.

As to Tiffany Madison, Plaintiffs allege that she "attempted to report" sexual harassment

---

[2] Throughout the Complaint, Plaintiffs misspell Ms. Caprara's last name as "Capara."

to her supervisor, who did not initially respond to her "messages." *Id.* ¶ 22. After "repeated attempts" to contact the supervisor, Ms. Madison's supervisor then "delegated to a subordinate the job of inquiring after [her] complaints." *Id.* ¶ 23. Ms. Madison then had to report the allegation to her alleged harasser's roommate. *See id.* ¶ 24. Nowhere in the allegations specific to Ms. Madison are any contentions that she experienced racial discrimination or harassment.

And finally, in addressing the two newly added Plaintiffs—Kayla Hogan and Eric Chaney—Plaintiffs allege only that Ms. Hogan (and other unidentified organizers) discussed unionization, *id.* ¶ 7, and that her employment and Mr. Chaney's employment with the Campaign (along with many others') ended after the March primary election, *id.* ¶ 10.

Plaintiffs then offer a hodgepodge of allegations. They first note that an African American supervisor, DeJuan Jackson, changed his haircut and posit that the haircut meant "he no longer comes across as crass and [is] the least offensive African American," and then speculate that someone "strongly encouraged" Mr. Jackson to change his haircut. *Id.* ¶¶ 27-28. Plaintiffs also set out a list of alleged "examples of racial discrimination," which seemingly summarize their other allegations, *id.* ¶ 26, and include no detail beyond bald conclusions. They then say the Campaign fired someone for "wearing black face"—in fact a charcoal facial mask— and "having it posted on social media." *Id.* ¶ 36. Finally, Plaintiffs complain that the office in which some Plaintiffs (and others) work is "in an unsafe location," *id.* ¶ 45, which Plaintiffs suggest means that Latino and African American field organizers are "valued less," *id.* ¶ 444.

### III.     ARGUMENT

#### A.     MOTION TO STRIKE

A court may strike from a complaint immaterial allegations that "are so unrelated" to the plaintiff's claims as to be "devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003)

4

(internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(f). Immaterial allegations are prejudicial when they confuse the issues. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009 (N.D. Ill. 1998).

Here, the Court should strike the extraneous allegations about the Campaign's supposed reaction to discussions of unionization and the sexual harassment complaint. They have no relevance to this case, which is about alleged racial discrimination under Section 1981. Plaintiffs do not (and could not) bring claims under laws such as Section 7 of the National Labor Relations Act or Title VII of the Civil Rights Act of 1964. By pleading "retaliation" and "intimidation" from Ms. Hogan's and unidentified organizers' attempts to unionize and Ms. Madison's report of alleged sexual harassment, *see* Compl. ¶¶ 7-8, 25, Plaintiffs try to bolster their thinly pleaded racial discrimination-based claims with inflammatory—but irrelevant—matters. That is improper, and the Court should strike these allegations accordingly. *See id.* ¶¶ 7-8, 22-25.

## B.     MOTION TO DISMISS

### 1.     Legal standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint that—as in this case—fails to plead sufficient facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The complaint's facts—taken as true—must "allow[] the court to draw the reasonable inference" that the defendant engaged in the conduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Atkins v. City of Chi.*, 631 F. 3d 823, 832 (7th Cir. 2011) (courts consider whether plaintiff's allegations are "unrealistic," "contradict" one another, or are "'speculative'").

### 2.     The Complaint does not allege plausible claims for relief

#### a.     The Complaint fails to allege facts about most Plaintiffs' employment

The most striking feature of the Complaint is what it lacks. Despite the Complaint's inflammatory language, it fails to allege any specific, relevant facts about the employment of

5

seven of the Plaintiffs: Jason Benton, Jelani Coleman, Erica Kimble, Nathaniel Madison, James Tinsley, Mark Walker, and Tiffany Madison. *See* Compl. ¶¶ 5-69. The Complaint recounts only their employment history *before* they joined the Campaign. *See id.* ¶ 3(a)-(j). Instead, those Plaintiffs rely on generalized, vague allegations, *see id.* ¶ 26, that amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678. For this reason alone, those seven Plaintiffs fail to state any plausible claim for relief.

### b. Plaintiffs do not plausibly allege racial discrimination

Even for those Plaintiffs as to whom there are at least *some* factual allegations in the Complaint, Plaintiffs fail to state plausible claims for relief. To state a claim for discrimination under Section 1981, Plaintiffs must allege (1) membership in a protected class, (2) an adverse employment action, and (3) some connection between their protected class and the adverse employment action. *See Shankle v. Village of Melrose Park*, No. 16 C 2582, 2018 WL 844422, at *2 (N.D. Ill. Feb. 12, 2018) (plaintiff failed to state claim because she did not "explain" how her employer's denial of work assignments constituted an adverse action).[3] Here, Plaintiffs plead no facts supporting an adverse employment action taken because of their race.

Not every employment action—even if unfavorable—supports a race discrimination claim. The action "must materially alter the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). An adverse action imposes a significant change in employment status, such as:

> (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such

---

[3] The Seventh Circuit generally applies the same analysis for claims under Title VII of the Civil Rights Act of 1964 and Section 1981, and the Campaign cites Title VII cases where applicable. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017).

as a hostile work environment or conditions amounting to constructive discharge.

*Monroe v. Columbia Coll. of Chi.*, No. 17-cv-5837, 2018 WL 4074190, at *3 (N.D. Ill. Aug. 27, 2018) (internal quotation marks omitted).

Only Ms. Calhoun, Ms. Hogan, and Mr. Chaney plead any action that could conceivably be adverse. Ms. Calhoun claims she resigned because the hotel the Campaign paid for her to stay in after a volunteer family denied her housing was "in an unsafe part of town." *See* Compl. ¶¶ 12-18. Even if the Campaign was responsible for the actions of that family—which Plaintiffs do not allege is employed by or has a contractual relationship with the Campaign—Ms. Calhoun has not alleged an adverse action. An employer has no obligation to pay for or arrange housing for its employees. In any event, Ms. Calhoun's claim appears to be premised on her view that the hotel the Campaign paid for was not in a sufficiently nice neighborhood. *Id.* ¶¶ 18-19. The Campaign is aware of no authority holding that an employer's failure to (voluntarily) pay for housing an employee deems "adequate" can be an adverse employment action.

To the extent Ms. Calhoun premises her discrimination claim on her resignation, she does *not* allege that the Campaign ended her employment or any facts even remotely suggesting constructive discharge. Nor could she, for she would have to allege working conditions "even more egregious" than those required for a hostile work environment claim. *See Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015) (internal quotation marks omitted). Her allegations, therefore, give rise only to the reasonable inference that she voluntarily quit her job. *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014) ("employee who voluntarily resigns cannot be said to have experienced an adverse employment action" if there is no constructive discharge), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). She pleads no adverse action.

7

Although Ms. Hogan and Mr. Chaney allege that they were "terminated" after the primary, Compl. ¶ 10, they do not allege that their employment ended for discriminatory reasons, *see id.* They plead no facts from which the Court can reasonably infer a connection between their protected class and the end of their employment. *See* Shankle, 2018 WL 844422, at *2. Indeed, they allege many others were terminated at the same time. Compl. ¶ 10. The only reasonable inference is that their employment ended because the primary election ended.

The rest of the Plaintiffs do not allege any tangible action materially affecting the terms of their employment. Plaintiffs do not allege, for example, that the Campaign decreased their pay or benefits, demoted them, or imposed any condition that would reduce their future prospects or stunt their skills. *See* Compl. ¶ 3(a)-(j); *Monroe*, 2018 WL 4074190, at *3.

Where Plaintiffs presumably intend to allege an adverse action based on their working conditions, they fall far short. They are light on details, alleging that Ms. Colón was not allowed to ask a question during the training and that Mr. Little complained about discrimination and the Campaign responded with a conference call (arranged too hastily, in Plaintiffs' opinion). *See id.* ¶¶ 35, 39-41. Plaintiffs also allege that the Campaign ignored their requests for racial sensitivity training in early 2018, *id.* ¶ 6, but then held such a training later in the year, *id.* ¶ 29.[4] Finally, Plaintiffs generally allege that the Campaign did not allow them to telecommute, micromanaged and belittled them, permitted "crass and racially discriminatory language," denied resources, and restricted access to Mr. Pritzker and "positions of advancement."[5] *See id.* ¶ 26. But even taking these allegations as true, Plaintiffs do not plead an adverse action because they allege nothing that *materially* affected their employment. At most, the Complaint expresses Plaintiffs'

---

[4] Because all Plaintiffs but Ms. Hogan and Mr. Chaney were hired in the summer of 2018, even if denying a requested training in early 2018 could be a material adverse action, it cannot support a claim for ten of the Plaintiffs.
[5] With regard to "positions of advancement," Plaintiffs do not identify any positions or which Plaintiff (if any) applied for such a position.

"subjective preference" for different working conditions, *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *cert. denied*, 540 U.S. 1004 (2003), or that they encountered slights and "annoyances," *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016); *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (general hostility not adverse employment action if not pervasive). Just because they are "unhappy" with their jobs does not mean they have pleaded an "adverse action." *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

What is more, being assigned to work in "specific areas" that are majority-minority communities instead of "majority-white working environments," Compl. at 2; *see also id.* ¶ 26(i) ("Assigning Latino and African American field organizers on the basis of their race . . . .), cannot be an adverse action, *Anzaldua v. Chi. Transit Auth.*, No. 02 C 2902, 2002 WL 31557622, at *4 (N.D. Ill. Nov. 15, 2002) ("racial composition of [plaintiff's] co-workers or the neighborhood where [plaintiff] was transferred to" cannot be "an adverse employment action"). That kind of assignment is not an adverse action. Indeed, asserting that it is offends the principles underlying antidiscrimination laws. *See id.* at *3 ("Such an argument contains precisely the stereotypical notions and racist attitude that [the plaintiff] herself complains of.").

Finally, even if Plaintiffs had pled plausibly that they experienced an adverse employment action, which they have not, their discrimination claims still fail because they do not plausibly allege that they suffered any such action *because of* their race. Of course, Plaintiffs need not plead a *prima facie* case, but they must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678; *see also* Compl. ¶ 26(i) (conclusory statement that organizers were assigned based on race).

For these reasons, Plaintiffs fail to state a claim for race discrimination.

### c. Plaintiffs do not plausibly allege racial harassment

Plaintiffs' hostile work environment claim also fails as inadequately pleaded. To be clear, racial harassment of any kind flatly violates the Campaign's policies and values. But none of the Plaintiffs allege any racially harassing behavior. To plausibly state their claim, Plaintiffs must allege facts supporting the reasonable inference that the supposed harassment was (1) based on race; (2) objectively and subjectively offensive; and (3) so severe or pervasive that it altered the conditions of employment and created an abusive environment. *See Dandy v. United Parcel Serv.*, 388 F.3d 263, 271 (7th Cir. 2004). The Campaign focuses on the third requirement—severe and pervasive harassment—because the Complaint so obviously founders on it.

Whether alleged conduct creates a hostile work environment depends on "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). "Offhand comments" and "isolated incidents"—even if harassing—are not severe or pervasive. *See Dandy*, 388 F.3d at 271 (internal quotation marks omitted).

The incidents Plaintiffs allege are not severe. Taking Plaintiffs' allegations as true, it is not reasonable to infer that being micromanaged, subjected to unspecified intimidation, told to stay silent at a single training, and seated next to a white supervisor altered their working conditions to the point of abusiveness. *See* Compl. ¶¶ 25, 26(e), 31, 33; *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008) ("loud, unprofessional tone during one meeting" is not "severe [or] pervasive"); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016) ("Generally, rude or impolite interactions with co-workers are insufficient to support a claim for hostile work environment."); *Monroe*, 2018 WL 4074190, at *5 (same, as to "hyper-surveillance"). And

10

Plaintiffs' vague charges of harassment and intimidation—even when coupled with new vague charges of belittlement, condescension, and bullying—also fail to support an inference of severity. *See* Compl. ¶ 26(e), (j); *Porter v. City of Chi.*, 700 F.3d 944, 956 (7th Cir. 2012) ("vague and conclusory allegations of being 'harassed' and 'intimidated'" by supervisors were insufficient); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 535 (7th Cir. 1993) (same, as to supervisor's condescension). In similar fashion, while the Complaint references "crass and racially discriminatory language," Compl. ¶ 26(h), it says nothing about what that allegedly discriminatory language was, *see Nichols*, 755 F.3d at 601. And although Plaintiffs lob the incendiary allegation that someone working for the Campaign wore blackface (and was fired for doing so) and had it posted on social media, Plaintiffs make no allegation that they were exposed to that conduct. *See* Compl. ¶ 36; *see Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (plaintiffs must be exposed to the racial hostility they complain of). Even assuming Plaintiffs felt offended by events to which they attribute a racial nature, what they allege is not severe as a matter of law and cannot support a hostile work environment claim. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647-49 (7th Cir. 2011) (reasonable person would not have found workplace with racially charged language and imagery hostile).

Nor are the alleged incidents pervasive. First, most of the alleged harassment occurred at a single training (when Ms. Hogan and Mr. Chaney were not even employed by the Campaign). *See* Compl. ¶¶ 10, 29-35. That isolated incident cannot support a claim. *See Nichols*, 755 F.3d at 601; *see also Atanus*, 520 F.3d at 676; *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) ("interracial strife" at diversity training insufficient to support hostile work environment claim). Second, the Complaint says nothing about how often allegedly discriminatory language was used or how often Plaintiffs experienced any other alleged

discrimination. *See Nichols*, 755 F.3d at 601. Treating Plaintiffs' allegations as true, the only reasonable inference is that they describe isolated incidents, particularly given that Plaintiffs are attempting to aggregate the claims of 12 different individuals.

Indeed, courts in the Seventh Circuit have found far more egregious conduct to be insufficient. Allegations of racially charged language—particularly if at all ambiguous—or racially offensive imagery is alone not enough to state a claim. *See Ellis*, 650 F.3d at 647-49 (ambiguous use of potentially offensive word, fellow employee's confederate flag clothing, and offensive remark about African American person did not create hostile workplace); *Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016) (referring to African American man as "sugar daddy" and commenting on his former afro hairstyle were "at worst mild and ambiguous" comments). Even allegations of deeply disrespectful conduct often are held insufficient when the conduct did not pervade the workplace. Courts have held, for example, that vandalizing an African American employee's car or touching an African American employee's hair or skin one time do not suffice. *See Hobbs v. City of Chi.*, 573 F.3d 454, 464-65 (7th Cir. 2009) (vandalism); *Adam*, 210 F. Supp. 3d at 989 (touching hair and skin). And allegations about supervisors or coworkers making the workplace unpleasant or more difficult are also insufficient. *See, e.g.*, *Hobbs*, 573 F.3d at 463, 465 (assigning undesirable job duties); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (ignoring suggestions and failing to inform of changes); *Peters*, 307 F.3d at 552 ("interracial strife" at workplace diversity training). The facts Plaintiffs allege come nowhere close to the conduct in those cases, and they do not state a claim for hostile work environment. The Court should dismiss the claim.

### d.    Plaintiffs do not plausibly allege retaliation

Plaintiffs fare no better on their retaliation claim. To plausibly plead that claim, Plaintiffs must allege that they engaged in protected activity and suffered an adverse employment action,

12

and that there is a "causal connection" between the protected activity and the adverse action. *See Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at *5 (N.D. Ill. Sept. 20, 2018) (plaintiff failed to state claim because he did not plead sufficient facts that alleged protected activity caused alleged retaliatory conduct). For this claim, the action must be significant enough to dissuade a reasonable employee from engaging in protected activity. *See Poullard*, 829 F.3d at 856. An action that does not actually "harm" the plaintiff cannot sustain a retaliation claim. *Id.* at 857-58; *see also Adam*, 210 F. Supp. 3d at 990 (citing *Poullard*, 829 F.3d at 857-58). The Complaint lacks any plausible allegations that the Campaign took any adverse action against any Plaintiff because he or she engaged in protected activity.

For starters, Ms. Hogan and Mr. Chaney do not plead any factual allegations giving rise to the plausible inference that they engaged in protected activity or were retaliated against because of their race. Indeed, they plead themselves out of this claim. *See Atkins*, 631 F.3d at 832 ("[A plaintiff] can plead himself out of court by pleading facts that show that he has no legal claim."). They allege that their employment ended after the primary election—months *before* the alleged protected activity in September 2018 and the alleged retaliation in October 2018. *See* Compl. ¶¶ 38, 52. By their own pleadings, they could not have experienced the complained-of retaliation. For this reason alone, these two Plaintiffs fail to state a retaliation claim.

For the Plaintiffs who were employed at the time of the alleged retaliation, other than alleging that Mr. Little complained a week after the training, the Complaint says only that "Plaintiffs complained" immediately after the training. Compl. ¶¶ 38-39. Although informal complaints may be protected activity, *Davis v. Time Warner Cable of Se. Wisc., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011), aside from Mr. Little, Plaintiffs do not allege who complained, what they complained of, or who they complained to, Compl. ¶¶ 38-39.

Even assuming that suffices to plead that all Plaintiffs engaged in protected activity, their retaliation claim fails for lack of an adverse action. Plaintiffs allege that the Campaign placed some (but not all) of them on paid administrative leave pending an investigation. *See* Compl. ¶ 52. But paid leave is not an adverse action because it does not affect Plaintiffs' "position, salary, or benefits." *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 786-87 (7th Cir. 2007) (collecting cases and holding that paid leave pending investigation is not materially adverse as a matter of law); *see also Graham v. AT&T Mobility LLC*, No. 09 C 6564, 2011 WL 4538453, at *9 (N.D. Ill. Sept. 29, 2011) ("[A]dministrative leave is not a materially adverse employment action" in a retaliation case.). That is exactly the case here. Nowhere do Plaintiffs allege that the paid leave affected the conditions of their employment. *See* Compl. ¶ 52. Simply alleging that they were placed on paid administrative leave while the Campaign investigated their conduct—without so much as a hint of any negative, *material* impact on their employment—fails to meet the plausibility standard. *See Nichols*, 510 F.3d at 786-87.

Plaintiffs likewise fail to plead an adverse action based on the other events they allege. Plaintiffs claim there were "numerous and ongoing complaints of racial discrimination," which the Campaign addressed by holding a mandatory sensitivity training. Compl. ¶ 29. And after the training, the Complaint alleges that the Campaign responded to complaints about the training itself by scheduling a conference call. *Id.* ¶¶ 38-40. Apparently, Plaintiffs are dissatisfied with both the training and the conference call. But their dissatisfaction does not an adverse action create. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 886 (7th Cir. 2012) ("investigation itself" could not be retaliatory adverse action); *see also Sedwick v. West*, 92 F. Supp. 2d 813, 822 (S.D. Ind. 2000) (even investigation that makes employee feel "targeted and uncomfortable" is not retaliatory adverse action). A reasonable employee would not be dissuaded from making similar

complaints after the Campaign did exactly what Plaintiffs wanted—address their concerns. *See* Compl. ¶¶ 37-38. Plaintiffs do not state an actionable retaliation claim. *See Adam*, 210 F. Supp. 3d at 990. The Court should, therefore, dismiss this claim as inadequately pleaded.

### 3. The Court's dismissal should be with prejudice

The Court should dismiss Plaintiffs' Complaint with prejudice. Plaintiffs have now filed four versions of their Complaint, and each one has failed to state plausible claims for relief. Although Plaintiffs represented that they intended their second amendment merely to add Ms. Hogan and Mr. Chaney, *see* Mot. to Amend, ECF No. 20, at 4, 7, the version that they actually filed contains additional factual allegations, *see* Compl. ¶¶ 26(e), (i), 50. But those allegations, even with two new Plaintiffs in the lawsuit, do not cure any of the deficiencies (of which Plaintiffs were well aware) in Plaintiffs' prior complaints. Instead, Plaintiffs continue to throw out more conclusory statements—that there was "belittlement, condescension, and bullying of African American and Latino field organizers," for example—that do not push their claims "from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs have "had four bites at the apple," and "[e]nough is enough." *Atkins*, 631 F.3d at 832. Because any further amendment would be futile, the Court should dismiss with prejudice Plaintiffs' claims against the Campaign. *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013).

## IV. CONCLUSION

The Complaint is long on accusations and short on factual allegations. As pleaded, one cannot plausibly infer liability for racial discrimination, hostile work environment, or retaliation. Despite filing four versions of their Complaint, Plaintiffs cannot marshal facts that do not exist. The Court should (1) strike the Complaint's immaterial and prejudicial allegations under Rule 12(f), and (2) dismiss with prejudice all claims against the Campaign under Rule 12(b)(6).

Dated: December 28, 2018          Respectfully submitted,

**JB PRITZKER FOR GOVERNOR**

By: /s/ *William B. Stafford*
    One of Its Attorneys

    William B. Stafford
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Tel: (206) 359-8000
    Fax: (206) 359-9000
    BStafford@perkinscoie.com

16

## CERTIFICATE OF SERVICE

I, William B. Stafford, certify that on December 28, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may also access this filing through the Court's ECF system.

/s/ *William B. Stafford*
William B. Stafford

17

124717-0003/142578420.1