## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAXWELL LITTLE, JASON
BENTON, JELANI COLEMAN,
CELIA COLON, KASMINE
CALHOUN, ERICA KIMBLE,
NATHANIEL MADISON, TIFFANY
MADISON, JAMES B. TINSLEY,
MARK WALKER, KAYLA HOGAN,
and ERIC CHANEY,

        Plaintiffs,

        v.

JB PRITZKER FOR GOVERNOR,
JAY ROBERT PRITZKER, JULIANA
STRATTON, ANNE CAPARA,
QUENTIN FULKS, and CAITLIN
PHARO,

        Defendants.

No. 18 C 6954

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Maxwell Little, et al., filed a complaint against Defendants, JB Pritzker for Governor, et al., under 42 U.S.C. § 1981 alleging harassment, discrimination, retaliation, and defamation. (Dkt. 28). Defendant JB Pritzker for Governor ("the Campaign") and individual Defendants Jay Robert Pritzker, et al. filed separate Motions to Dismiss the Complaint for failure to state a claim under Rule 12(b)(6) or, alternatively, to strike immaterial or unrelated allegations under rule 12(f). (Dkts. 29, 32). For the reasons stated within, Defendants' Motions to Dismiss are granted in part and denied in part. The Motions to Strike are denied.

## BACKGROUND

Plaintiffs are currently, or were previously, employed as field organizers for the JB Pritzker for Governor campaign. (Dkt. 28, ¶ 3). Plaintiffs began their employment as early as May, 2017 and as recent as August, 2018. The Plaintiffs include seven black or African-American males, four Black or African-American females, and one Latina female. *Id.* Defendants include JB Pritzker for Governor, the relevant employer of Plaintiffs, as well as individually named Defendants in the positions of Candidate for Governor, Candidate for Lieutenant Governor, Campaign Manager, Deputy Campaign Manager, and Field Operations Director. *Id.* at ¶ 4.

Plaintiffs Hogan and Cheney allege they discussed forming a union with other organizers in response to ignored requests for racial sensitivity training and that in response they were "returfed," or geographically reassigned, and then terminated after the primary campaign. *Id.* at ¶ 4.

Plaintiff Calhoun alleges that she was told she was hired in Peoria to meet a "black female quota." *Id.* at ¶ 13. She also alleges she was denied housing because of her race and that she resigned her position because she was subsequently housed in an unsafe hotel. *Id.* at ¶¶ 15-17.

Plaintiff Tiffany Madison alleges she was sexually harassed by her supervisor and that because of her race, her report was mishandled. *Id.* at ¶¶ 22–25. She further alleges she was directed to report the incident to her harasser's roommate resulting in intimidation and retaliation. *Id.* at ¶¶ 24–25.

Plaintiff Celia Colon alleges an employee, who was later terminated for racial insensitivity, denied her the opportunity to ask a question during a cultural sensitivity training event because of her race. *Id.* at ¶ 35.

Plaintiffs allege that they collectively suffered racial discrimination including: race-specific work tasks and assignments, denial of work privileges, unsafe work conditions, unequal access to Jay Pritzker, denial of advancement opportunities, micromanagement, belittlement, condescension, bullying, dismissals of their complaints, crass and racially discriminatory language, and intimidation. *Id.* at ¶ 26.

Plaintiffs allege that a cultural sensitivity training event presented by the Campaign was insufficient to address the issue of racial discrimination in the workplace. *Id.* at ¶ 38. Furthermore, the sensitivity training event produced more incidents of discrimination including the use of racial epithets, racially targeted seating arrangements, and Defendants being told "not to say anything stupid." *Id.* at ¶¶ 31–35. Plaintiffs further allege that their complaints regarding the discrimination at the training event were met with an insufficient response and an intimidating conference call. *Id.* at ¶¶ 38–41.

Several of the Plaintiffs allege they were assigned to work in an unsafe office location where Jay Pritzker would not visit as a result of violent crime in the area. *Id.* at ¶¶ 45–48.

Plaintiffs allege that after they filed their complaint, Defendant Stratton widely disseminated false and disparaging statements about them, including that they were "extortionists." *Id.* at ¶ 50. Further, five of the Plaintiffs allege that after

they filed their complaint, Defendants Fulks and Pharo, with the direction and/or approval of Defendants Pritzker, Stratton, and Capara, placed them on administrative leave with pay pending investigation into allegations against them. *Id.* at ¶¶ 52, 53.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion is meant to challenge the legal sufficiency of the complaint. *Christiansen v. Cnty. of Boone, Ill.,* 483 F.3d 454, 457 (7th Cir. 2007). The Court accepts all well-pleaded allegations as true and views them in a light most favorable to plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th Cir. 2012). Though, the Court need not accept as true statements of law or statements that are purely conclusory and unsupported factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff's complaint must allege facts that establish its right to relief is more than speculative. *Cochran v. Ill. State Toll Highway Auth.,* 828 F.3d 597, 599 (7th Cir. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

## DISCUSSION

### I.  Motions to Strike

Defendants move to strike the allegations of unionization retaliation and in-sufficient response to sexual harassment allegations, arguing they are more appro-priately brought under the National Labor Relations Act and Title VII of the Civil Rights Act and, therefore, the allegations are immaterial and unduly prejudicial. (Dkt. 30, at 5; Dkt. 33, at 4).  The applicability of another cause of action does not by itself render a complaint immaterial, impertinent, or scandalous, but if the allega-tions carry no relevance to the instant complaint, they are more likely to be prejudi-cial.  *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if the matter bears no possible relation to controversy or may cause prejudice).  In *Talbot*, an unsupported allegation of intentionally spread-ing salmonella was prejudicial because it was both scandalous and unrelated to an underlying claim of employment fraud.  *Id*.

The question, therefore, is whether the allegations of Defendants' response to unionization efforts and sexual harassment reporting is either irrelevant or scandal-ous, or a combination of the two to the extent of causing prejudice.  Plaintiffs' com-plaint suggests the effort to unionize was limited to black employees and pursued in response to racially discriminatory conditions.  (Dkt. 28, at 5).  The allegation of an insufficient response to a complaint of sexual harassment is used as an exemplar of how the complaints of black workers were routinely overlooked in comparison to

white employees. *Id.* at 6. Both allegations are supported by pleaded facts and related to the underlying claim of racial discrimination. Though the allegations smack of sex discrimination and labor relation violations, they are not scandalous to the point of creating undue prejudice. Therefore, the Motions to Strike are denied.

## II.    Motions to Dismiss

### A.      Failure to Allege Specific Plaintiffs

Defendants argue the Complaint alleges insufficient facts to associate seven of the Plaintiffs with the claims found within it. (Dkt. 30, at 5–6). Specifically, Defendants identify Benton, Coleman, Kimble, Nathaniel Madison, Tinsley, Walker, and Tiffany Madison as plaintiffs with insufficiently vague and generalized allegations of racial discrimination. *Id.* Plaintiffs are required to allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the offense pleaded]." *Twombly*, 550 U.S. at 545. Besides listing them as employees of the Campaign, the above-named Plaintiffs, save one, are not again named within the factual allegations, most of which detail the personal experiences of other individual Plaintiffs. *See e.g.*, (Dkt. 28, at ¶¶ 7–8, 12–19, 22–25, 35). Tiffany Madison stands out within the list because, unlike the others, she specifically alleged racial discrimination for a discriminatory and insufficient response to her sexual harassment complaint. (Dkt. 28, at ¶¶ 21–25). Other pleaded instances of discrimination include actions against members of "POD 4" (Dkt. 28, at ¶¶ 12, 31, 41) and members of "Region 6" (Dkt. 28, at ¶ 45). However, the Complaint fails to identify any Plaintiff beside Colon as a POD 4 member (Dkt. 28, at ¶ 35) and names no Plaintiff as a Region 6 member. Though it

is likely Plaintiffs intended such inclusion to be inferred because specific outlier Plaintiffs such as Calhoun, Hogan, and Chaney are named when referring to incidents occurring outside of POD 4 or Region 6. (Dkt. 28, at ¶¶ 7, 10, 12–20).

Only two factual allegations incorporate Defendants collectively. (Dkt. 28, at ¶¶ 26, 50). First, Plaintiffs list, under a single paragraph, examples of general racial discrimination by the Campaign, including racially specific tasks, discriminatory refusal of telecommuting privileges, racial language, and racially selective geographic assignments. (Dkt. 28, at ¶ 26). Second, Plaintiffs collectively allege defamation by Stratton. (Dkt. 28, at ¶ 50). Though the remaining factual allegations vary in specificity for each Plaintiff, and not all Plaintiffs can be associated with each alleged instance of discrimination, the two collective allegations nonetheless include sufficient factual pleading under the *Twombly* pleading standard. 550 U.S. at 545; *See also Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). It is reasonable to expect subsequent evidence of discrimination against those Plaintiffs employed by the campaign while the alleged discriminatory conditions existed. The Motions to Dismiss the specifically named Plaintiffs for insufficient factual pleading is denied.

## B.    Failure to Allege Individual Liability

Defendants move to dismiss the claims of discrimination and harassment against Pritzker, Stratton, Capara, and Fulks, and move to dismiss the claim of harassment against Pharo, arguing these defendants had insufficient personal involvement in the alleged violations. (Dkt. 33, at 5). Leaders of an organization cannot be held personally liable for the organization's § 1981 violations unless the individuals

are alleged to have personally participated in the discrimination. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). Ignoring complaints of discrimination may suffice as personal participation. *See Nanda v. Moss,* 412 F.3d 836, 843 (7th Cir. 2005).

In their Response, Plaintiffs introduce new factual allegations that the five Defendants named in the motion were personally involved in discrimination and harassment because they "were made personally aware. . . of the racial discrimination," "ignored plaintiff's complaints," and "knew Plaintiffs were being harassed and discriminated against." (Dkt. 35, at 4). However, Plaintiffs may not introduce new facts to the complaint in a subsequent response. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Accordingly, the Court limits its analysis of the pending Motions to Dismiss to the four corners of the Complaint.

The Complaint alleges Pharo was personally involved in the Campaign's violations through her racially motivated and intimidating seating position at sensitivity training (Dkt. 28, at ¶ 33) and her role in Calhoun's discriminatory lodging arrangement. (Dkt. 28, at ¶ 17). Notwithstanding any further plausibility analysis, the two allegations against Pharo could be considered allegations of harassment and discrimination respectively. The Complaint further alleges Fulks and Pharo were personally involved in retaliation when they placed five of the Plaintiffs on administrative leave following the filing of this Complaint. (Dkt. 28 at ¶ 52). Finally, the Complaint alleges Pritzker, Stratton, and Capara were personally involved because the three directed and/or approved the allegedly retaliatory administrative leave.

(Dkt. 28, at ¶ 53). The Complaint identifies potential individual liability only for the allegations listed above yet it fails to make even bare conclusory allegations of personal involvement by the individually named Defendants in other counts. Therefore, the Motion to Dismiss the claims of discrimination and harassment against Stratton, Pritzker, Capara, and Fulks is granted.

### C. Failure to Plead Sufficient Facts for Individual Counts

Defendants move to dismiss the claims of discrimination, harassment, and retaliation against the Campaign, arguing the allegations lack sufficiently plausible factual pleading. (Dkt. 30, at 1–2). In addition, Defendants argue insufficient factual pleading of the discrimination claim against Pharo and the claim of defamation against Stratton (Dkt. 33, at 8, 9, 11).

#### 1. Harassment (Count I)

Defendants move to dismiss the claim of harassment, arguing the alleged conduct did not create a hostile work environment. (Dkt. 30, at 10). To support a claim of harassment by claiming a hostile work environment, Plaintiffs must allege objectively and subjectively offensive conduct by Defendants was so pervasive or severe that it altered the conditions of employment. *See Nichols v. Michigan City Plant Plan. Dept.*, 755 F.3d 594, 601 (7th Cir. 2014). Relevant factors in assessing a hostile work environment include (1) the frequency of the conduct, (2) the objective offensiveness of the conduct, (3) whether the offenses were physical rather than verbal, (4) the degree of work interference, and (5) whether the conduct was directed at the Plaintiff. *Id.*

Plaintiffs allege the harassing conduct included micromanagement, belittlement, condescension, bullying, crass and racially discriminatory language, and intimidation. (Dkt. 28, at ¶ 26). Again, however, Plaintiffs state mere conclusory statements that Plaintiffs suffered such harms without alleging details of the acts, identities, or dates to allow a reasonable inference of sufficient severity or pervasiveness. Therefore, in line with *Swierkiewicz*, *Twombly*, and *Iqbal*, the imprecise list of offenses fails to meet the necessary pleading standard. However, Plaintiffs allege, with sufficient factual support, incidents of potential racial harassment associated with a racial sensitivity training event for POD 4 in September of 2018. (Dkt. 28, at 8). The alleged conduct included members of POD 4 being told "not to say anything stupid," Colon being denied the use of a microphone, Pharo positioning herself between two black employees, the use of racial epithets by the trainer, and an intimidating conference call in response to complaints about the training. *Id.* at ¶¶ 31, 33, 35, 41.

Therefore, the Court assesses whether the allegations of the comments, language, seating, and complaint response create a reasonable inference that future discovery will produce evidence of severe and pervasive harassment. *Twombly*, 550 U.S. at 545. The fact that the harassment occurred around a single incident does not render the claim defective for lack of pervasiveness. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678 (7th Cir. 2001) (holding a single instance of harassment, if sufficiently severe, can trigger liability). However, limiting the allegation to a single instance raises the bar for establishing severity. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) (isolated incident of racial language insufficient to show

a hostile work environment). An isolated incident may be severe if it was physically threatening or if it materially impacted work performance. *See Nichols*, 755 F.3d at 601.

The bar for an isolated physical threat is high. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 545 (7th Cir. 2011) (finding the comment "if you want to see me kill someone, call me a [expletive]" was not a physical threat but merely "immature behavior"). Therefore, it is questionable if Pharos' physical presence in nearby seats or a conference call could reasonably suffice as physically threatening. An impact to work performance is likely the more appropriate route for the facts of this case. *See Haugerud*, 259 F.3d at 694 (finding harassment impacted work performance, in part, where a supervisor directed co-workers not to aid the plaintiff in her work duties). Being denied the opportunity to ask questions, having complaints of discrimination dismissed, and having further complaints discouraged through intimidation could reasonably be proven to have meaningfully impacted work performance. Moreover, potential harassment is considered more severe when, as here, the conduct came from a supervisor. *See Dandy,* 388 F.3d at 271. Therefore, Plaintiffs have alleged sufficient facts to support a claim of harassment.

However, the deficiency of the collective allegations compared to the well pleaded individualized allegations again raises the issue of inclusiveness. Harassment was adequately pleaded for members of POD 4, but Hogan, Chaney, and Calhoun were not identified as POD 4 members, nor can their membership reasonably

be inferred. Therefore, the Motion to Dismiss the count of harassment is granted only with respect to Plaintiffs Hogan, Chaney, and Calhoun.

## 2. Discrimination (Count II)

Defendants argue the Complaint is deficient in alleging discrimination by either the Campaign or Pharo. (Dkt. 30, at 1; Dkt. 33, at 8). Specifically, Defendants argue that the claims fail to allege adverse employment actions. (Dkt. 30, at 6; Dkt. 33, at 8). Potential adverse employment actions by the Campaign include assignments to racially specific tasks and locations, denial of telecommuting privileges, denial of a safe working environment, and denial of advancement opportunities. (Dkt. 28, at 7). The Court assumes the adverse employment action attributable to Pharo was subjecting Calhoun to unsafe lodging conditions. (Dkt. 28 at 6). An adverse employment action is considered a "quantitative or qualitative change in the terms or conditions of employment" which can involve a plaintiff's "current wealth, . . . career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 470 (7th Cir. 2018).

Plaintiffs' allegation of being denied advancement opportunities, if supported by factual pleading, would represent an adverse employment action. S*ee Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (collecting cases for denying advancement as discrimination). However, the allegation in the Complaint is a "mere conclusory statement" that Plaintiffs were denied advancement. The allegation comes with no factual support as to whose advancement was denied, when, or by

whom. In *Swierkiewicz v. Sorema N. A.*, the Supreme Court set a relatively low bar for pleading § 1981 cases, stating that presenting a prima facie case of discrimination was unnecessary prior to summary judgement and instead, it was only necessary to give notice of the claims and the grounds upon which they rest. 534 U.S. 506, 514 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Yet, even the holding in *Swierkiewcz*, which predated the more stringent plausibility pleading requirement of *Iqbal* and *Twombly*, required some factual support for the claim. *Id*. The Court held that detailing the events leading to the discrimination and identifying relevant individuals and dates provided sufficient notice. *Id*. In their Complaint, Plaintiffs offer no facts to support the bare assertion that they were denied advancement. Therefore, Plaintiffs have not adequately pleaded discrimination by denial of advancement opportunities.

Conditions of employment such as the denial of telecommuting privileges and assignment to undesirable tasks or work locations fall short of adverse employment actions. *See Chaib v. Indiana*, 744 F.3d 974, 983 (7th Cir. 2014) (finding a refusal to provide desired training and job transfer was not adverse); *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 505 (7th Cir. 2004) (finding a reduction in the scope of job duties was not adverse); *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001) (finding a location transfer with an increased commute time was not adverse). Even cumulatively, the multiple subjectively undesirable employment actions do not create an adverse employment condition. *See e.g., Taylor v. Comptroller's Off. of Ill.*, 125 Fed. Appx. 69, 72 (7th Cir. 2005). Therefore, the claim of discrimination

by way of discriminatory work tasks, privileges, and work locations cannot survive the Motions to Dismiss.

The Complaint does, nonetheless, include adequately pleaded allegations of adverse employment actions. First, Plaintiffs allege that the Campaign neglected Colon's sexual harassment complaint because of her race. (Dkt. 28, at 6); *see Nanda*, 412 F.3d at 843 (ignoring harassment complaints may be discrimination). Second, the Campaign allegedly terminated Hogan and Chaney after they challenged alleged racial inequality. (Dkt. 28, ¶ 10); *see Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir.2005) (termination was adverse employment action). Third, the Campaign allegedly subjected Calhoun to unsafe work conditions because of her race. (Dkt. 28, ¶¶ 17–19); *see Herrnreiter*, 315 F.3d at 744 (finding discrimination for "humiliating, degrading, unsafe, [or] unhealthy" adverse employment conditions). Fourth, the Campaign failed to address racial discrimination complaints made by POD 4. (Dkt. 28, at 8); *see Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (finding liability for ignoring complaints of discrimination). Finally, the Campaign failed to address substantiated risks of violent crime at the Region 6 office. (Dkt. 28 at 9); *see Herrnreiter*, 315 F.3d at 744. Therefore, the Complaint adequately pleads adverse employment actions.

However, having reduced the pleadings to discrimination suffered by Hogan, Chaney, Calhoun, Colon, POD 4, and Region 6, there is a question of inclusiveness of the Plaintiffs. More specifically, whether it can reasonably be inferred that the eight unnamed plaintiffs were members of either POD 4 or Region 6. The Complaint states

Region 6 is within POD 4 and that the "vast majority" of black and latino field organizers are "herded" into the POD 4. (Dkt. 28, at ¶ 4). Making all reasonable inferences in favor of the Plaintiffs, the Court can infer that because the Complaint singles out individuals only as exemplars of the discrimination (*See, e.g.*, Dkt. 28, at ¶ 12) that the remaining Plaintiffs are intended to be victims of the collectively pleaded allegations for POD 4 if not the more specific subset of Region 6. Therefore, at a minimum, the remaining Plaintiffs were subjected to the allegedly discriminatory training event, the dismissal of their racial discrimination complaints, and the allegedly intimidating conference call. (Dkt. 28 at ¶¶ 29–41).

With regard to Pharo, Defendants repeat their argument that Plaintiffs failed to allege an adverse employment action. (Dkt. 33, at 8). Pharo allegedly assigned Calhoun to an unsafe hotel and then dismissed her requests to move despite the availability of cheaper lodging. (Dkt. 28, at 6). Therefore, it is a question of fact whether Pharo's lodging assignment and subsequent request denial rise to the level of an adverse employment action. The Court can reasonably anticipate that discovery will produce evidence of Calhoun's lodging being "unsafe" and "unhealthy" rising to the degree of an adverse employment action. *See Herrnreiter*, 315 F.3d at 744.

Defendants attempt to bolster their position with arguments that Pharo's actions were not motivated by race and that an implied claim of constructive discharge would fail for lack of a hostile work environment. (Dkt. 28, at 9). Having sufficiently pleaded facts regarding an adverse employment action and Calhoun's membership in a protected class, Plaintiff need not reach a higher bar of plausibility for the causal

link between the two. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Nevertheless, Pharo is alleged to have had a role in other discriminatory acts such as suppressing participation by black employees at a training event and placing several Defendants on administrative leave in retaliation for the instant Complaint of racial discrimination. (Dkt. 28, at 8, 10). Taking the allegations against Pharo cumulatively and drawing all reasonable inferences in favor of the Plaintiffs, it is plausible that the adverse employment action against Calhoun resulted because of her race. *See Shanoff v. Illinois Dep't of Human Services*, 258 F.3d 696, 705 (7th Cir. 2001) (holding actions or remarks that do not have an apparent unlawful animus may be sufficiently intertwined with discriminatory remarks or acts to conclude a discriminatory animus). Furthermore, Plaintiffs do not expressly claim constructive discharge and such an allegation is not necessary to pursue a claim of discrimination. *See Madlock*, 885 F.3d at 470. Because the Complaint adequately alleges discrimination by both the Campaign and Pharo, the Motions to Dismiss the counts of discrimination are denied.

### 3. Retaliation (Count III)

Defendants move to dismiss the claims of retaliation, arguing the Complaint fails to allege that Plaintiffs were engaged in protected activity and that, even if they were, they were not subjected to an adverse employment action. (Dkt. 30, at 13–14, Dkt. 33, at 1—11). To plead retaliation, Plaintiffs must sufficiently allege that they engaged in a protected activity and suffered a materially adverse employment action because of the activity. *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 861-

862 (7th Cir. 2015). An employment action is materially adverse if it would dissuade a reasonable employee from engaging in the protected activity. *Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016). The timing of the adverse employment action can create a reasonable inference of causation between the activity and the employment action. *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011).

Regardless of any further analysis of protected activity or adverse employment action, the Complaint is imprecise on exactly which Plaintiffs suffered retaliation. The Complaint must reach a threshold of fair notice, detailing the grounds on which a claim rests and naming the relevant parties. *See Swierkiewicz*, 534 U.S. at 514. Plaintiffs argue that a paid suspension amounts to an adverse employment action (Dkt. 35, at 8) and that five employees were placed on paid suspension. (Dkt. 28, at ¶ 52). After excluding Hogan, Chaney, and Calhoun because of their employment dates, eight Plaintiffs remain that could potentially make up the group of five suspended employees. Unlike the Court's reasonable inference of certain Plaintiffs' inclusion in POD 4, the Court cannot make a reasonable inference as to which five of the Plaintiffs suffered retaliation. Therefore, because the Complaint fails to name which Defendants suffered retaliation, it fails to reach an adequate threshold of fair notice. The Motions to Dismiss are granted with regard to all claims of retaliation.

### 4. Defamation (Count IV)

Defendants move to dismiss the claim of defamation against Stratton arguing the Complaint (1) does not adequately allege *per quod* defamation because it does not

allege special damages, and (2) it does not allege *per se* defamation because it fails to allege that Defendants imputed the commission of a criminal act. (Dkt. 33, at 12–13). To allege defamation, Plaintiffs must plead facts that Stratton published an un-privileged and false statement to a third-party about Plaintiffs, causing damages. *Green v. Rogers*, 234 Ill.2d 478, 491 (2009). Pleaded damages would need to show harm to Plaintiffs' reputations to the extent of deterring their community from asso-ciating with them. *Id*. The Complaint alleges Stratton made the false statement that Plaintiffs were "extortionists" and, as a result, Plaintiffs suffered reputational harm, emotional distress, humiliation, embarrassment, fear, emotional trauma and dis-tress, and interference with their normal lives. (Dkt. 28, at ¶¶ 50, 69).

To support a *per quod* defamation claim, Plaintiffs are required to plead actual special (pecuniary) damages. *See Bryson v. News Am. Publications, Inc.*, 174 Ill.2d 77, 104 (1996); *See also*, F.R.C.P. 9(g) (special damages must be specifically stated) (applies to a state law defamation case in federal court, *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269–70 (7th Cir. 1983)). Plaintiffs' allegation of vague harms such as distress, trauma, and interference do not satisfy the heightened pleading standard for specificity. Therefore, Plaintiffs have not adequately pleaded *per quod* defamation.

Conversely, when pleading *per se* defamation, the alleged harm is obvious and apparent on its face and specific damages need not be specifically pleaded given the nature of the defamation fits within at least one of several accepted categories. *Green*, 234 Ill.2d at 491-92. Though Defendants argue that the claim could only fit under

the category of imputing a criminal act, Stratton's alleged accusation could feasibly fall under the categories of imputing a lack of integrity and ability in job functions or otherwise prejudicing a person's profession. *Id.* at 491–492; *see also Kumaran v. Brotman*, 247 Ill.App.3d 216 (Ill. App. Ct. 1993).

To allege *per se* defamation for imputing a criminal act the defendant's statements must be an express accusation of a specific indictable offense, not a mere inference of illegal activity. *See Kapotas v. Better Govt. Ass'n*, 2015 IL App (1st) 140534, ¶51 (stating "the use of a term which has a broader, noncriminal meaning does not impute the commission of a crime"). In *Coghlan v. Beck*, for example, an Illinois Appellate Court held the term "fraud" in a business letter was used as "loose figurative language" and was not actionable as defamation for the imputing criminal fraud. 2013 IL App (1st) 120891, ¶50. In the instant case, the use of the term "extortion" could refer to its conversational meaning as something generally coercive, such as an excessive overcharge (*See* AM. HERITAGE DICTIONARY (3d ed. 1997)) or it could refer to the codified criminal act (18 U.S.C.A. § 1951(b)(2) ("obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right")). Without any additional pleaded facts, the context suggests the extortion comments were in response to the instant Complaint and not to any other specific threat or action by Plaintiffs. Therefore, at worst, Stratton's comment referred to a coercive frivolous lawsuit which is an abuse of process civil offense and not an indictable criminal offense. *See Kumar v. Bornstein*, 354

Ill.App.3d 159, 165-66 (2004) (instituting proceedings for the purpose of extortion is an abuse of process).

The Complaint is more effective in pleading an imputation of a lack of professional integrity. Though accusations of being an extortionist would generally imply general dishonesty and poor character, the defamation of professional integrity must be directly associated with job skills or functions. *See Cody v. Harris*, 409 F.3d 853, 858 (7th Cir. 2005) (finding accusations of posting lewd material on a work website was not defamation because the act did not reflect a deficiency in professional integrity or job skills). However, in *Kumaran*, the court held that accusing a teacher of filing "scam" lawsuits was defamation because characterizing him as criminally deceptive maligned his ability to serve as an educator role-model. 247 Ill.App.3d at 227. The analogous facts of *Kumaran* are persuasive here. Though Plaintiffs' roles as campaign organizers may be less sensitive than a teacher in terms of concern for professional integrity, gaining a reputation for coercive lawsuits against a campaign would prejudice the Plaintiffs in their ability to seek future political campaign employment. There is sufficient plausibility at this stage that *per se* defamation of professional integrity may be proven. Given the applicability of *per se* professional integrity prejudice the claim of defamation does not fail for lack of factual plausibility.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions to Dismiss are granted in part and denied in part. The Motions to Strike are denied. In sum, the following claims have been dismissed for inadequate pleading.

1. For lack of factual pleading, the claim of harassment (Count I) is dismissed as brought by Plaintiffs Hogan, Chaney, and Calhoun.

2. For lack of personal involvement, the claims of harassment (Count I) and discrimination (Count II) against Defendants Pritzker, Capara, Fulks, and Stratton are dismissed.

3. For insufficient notice pleading, the claim of retaliation (Count III) is dismissed entirely.

   The remaining counts include:

1. The claims of harassment (Count I) against the Campaign and Pharo (excluding Plaintiffs Hogan, Chaney, and Calhoun).

2. The claims of discrimination against the Campaign (Count II).

3. The claim of discrimination (Count II) against Pharo (excluding Plaintiffs Hogan, Chaney, and Calhoun).

4. The claim of defamation against Stratton (Count IV).


Virginia M. Kendall
United States District Judge

Date: April 5, 2019