IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Maxwell Little, et al., | No. 1:18-CV-06954 |
| Plaintiffs, | |
| v. | Honorable Virginia M. Kendall |
| JB Pritzker for Governor, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF NON-PARTY JB PRITZKER AND DEFENDANT JULIANA STRATTON'S MOTION FOR PROTECTIVE ORDER**

Non-party JB Pritzker and Defendant Juliana Stratton (collectively, the "Moving Parties") provide this memorandum in support of their motion requesting that the Court issue a protective order related to their depositions noticed by Plaintiffs Maxwell Little, Jason Benton, Jelani Coleman, Celia Colón, Kasmine Calhoun, Erica Kimble, Nathaniel Madison, Tiffany Madison, James B. Tinsley, Mark Walker, Kayla Hogan, and Eric Chaney (collectively, "Plaintiffs").[1] The Moving Parties request that the Court enter an order (1) prohibiting Plaintiffs from deposing Mr. Pritzker because he has no direct personal knowledge related to their claims and allegations that cannot be obtained from another source and (2) limiting the scope of Ms. Stratton's deposition to only Plaintiff's single defamation claim against her and related allegations and the time of her deposition to no more than three hours total.[2] In the alternative, the Moving Parties request that the Court defer ruling on this motion until after Plaintiffs take other depositions they have noticed, which include depositions of the Campaign, the former

---

[1] Before filing this motion, Defendants' counsel met and conferred with Plaintiffs' counsel via phone on January 14, 2020, at 4:30 p.m. Central time to discuss Plaintiffs' intended depositions of Mr. Pritzker and Ms. Stratton. *See* Local Rules N.D. Ill. LR 37.2; Declaration of William B. Stafford in Support of Motion for Protective Order ("Stafford Decl.") ¶ 13. The Moving Parties' efforts to resolve the impasse regarding Plaintiffs' noticed depositions short of seeking the Court's intervention are more fully detailed in the LR 37.2 certification in this memorandum and in the Declaration of William B. Stafford in Support of Motion for Protective Order.

[2] The Moving Parties have noticed their Motion for presentment on the first permissible and available Court date after they had an opportunity to meet and confer with Plaintiffs and taking into consideration the Martin Luther King, Jr. holiday on January 20, 2020, and the Court's subsequent availability. *See* Stafford Decl. ¶ 13.

146864000.1

Campaign Manager, and the former Deputy Campaign Manager. At the very least, the Moving Parties request that the Court require that any inquiry of Mr. Pritzker and Ms. Stratton as to Plaintiffs' discrimination and harassment claims be by no more than seven written interrogatories or written deposition questions.

146864000.1

**TABLE OF CONTENTS**

Page

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LOCAL RULE 37.2 CERTIFICATION | | 2 |
| III. | BACKGROUND | | 2 |
| | A. | Plaintiffs Have Received Extensive Written and Documentary Discovery in this Case Over the Course of Many Months | 2 |
| | B. | Plaintiffs Finally Noticed Depositions After the Court Extended Discovery a Second Time to Address Plaintiffs' Intransigence | 3 |
| | C. | Mr. Pritzker and Ms. Stratton Were the Key Figures of the Campaign | 4 |
| | D. | Mr. Pritzker and Ms. Stratton Are Now the Highest-Ranking Officials in the State of Illinois | 6 |
| | E. | Mr. Pritzker and Ms. Stratton Are Not Parties to Plaintiffs' Discrimination and Harassment Claims | 7 |
| IV. | ARGUMENT | | 7 |
| | A. | Legal Standard | 7 |
| | B. | The Court Should Issue a Protective Order Prohibiting Plaintiffs from Deposing Mr. Pritzker and Limiting the Time and Scope of Ms. Stratton's Deposition | 9 |
| | | 1. Neither Mr. Pritzker Nor Ms. Stratton Has Unique Personal Knowledge Related to Plaintiffs' Allegations of Discrimination and Harassment | 9 |
| | | 2. Even if Mr. Pritzker or Ms. Stratton Had Personal Knowledge Regarding Plaintiffs' Allegations of Discrimination and Harassment, Plaintiffs Can—And Have—Obtained Evidence Through Other Means | 11 |
| | | 3. The Fact that Mr. Pritzker and Ms. Stratton Are Illinois's Two Highest-Ranking Elected Officials Further Warrants a Protective Order | 12 |
| | C. | In the Alternative, the Court Should Defer Ruling on this Motion Until Plaintiffs Take the Other Noticed Depositions or At Least Permit Plaintiffs Only Written Discovery of Mr. Pritzker and Ms. Stratton as to the Discrimination and Harassment Claims | 13 |
| V. | CONCLUSION | | 14 |

I.      INTRODUCTION

Plaintiffs seek to depose JB Pritzker and Juliana Stratton, who were the two key figures of Defendant JB Pritzker for Governor (the "Campaign")—and, now, the highest-ranking elected officials—Governor and Lieutenant Governor—in Illinois state government. But there are limits on such discovery. Courts routinely take action under Federal Rule of Civil Procedure 26(c) to preclude efforts by litigants suing organizations to target high-ranking "apex" leaders in discovery. The Court should do so here.

Neither Mr. Pritzker nor Ms. Stratton have personal knowledge of the events underlying Plaintiffs' claims of racial discrimination and harassment. The Campaign was a major, staff-run operation with offices throughout the state. Governor Pritzker and Lieutenant Governor Stratton spent their time campaigning across the state for the support of Illinois voters. Their role was not to manage the day-to-day operations of the Campaign. They had nothing more than minimal interactions with some Plaintiffs and did not receive any complaint from any Plaintiff that they understood to be an assertion that a Plaintiff had experienced specific workplace discrimination or harassment.

And not only that, Plaintiffs have received extensive documentary and written discovery from Defendants and are set to depose other witnesses—including a 30(b)(6) deposition of the Campaign and depositions of the two highest-ranking staff members of the Campaign (the former Campaign Manager and the former Deputy Campaign Manager). In short, Plaintiffs have been more than able to obtain discovery by less extreme methods than deposing the sitting Governor and Lieutenant Governor of Illinois.

The only apparent reason Plaintiffs seek Mr. Pritzker's deposition is to pull him back into litigation from which the Court dismissed him months ago. Meanwhile, Defendants have not sought to preclude Ms. Stratton's deposition, but did reasonably request Plaintiffs limit that deposition to a reasonable duration and to the subject matter of Plaintiffs' single remaining claim against Ms. Stratton (the defamation claim). Plaintiffs have refused. The Court should not permit Plaintiffs to engage in this harassing litigation tactic. The Moving Parties request that the Court

146864000.1                                              1

enter a protective order prohibiting Plaintiffs from deposing Mr. Pritzker and limiting the time and scope of Ms. Stratton's deposition.

## II. LOCAL RULE 37.2 CERTIFICATION

On January 14, 2020, at 4:30 p.m. Central time, Defendants' counsel, William B. Stafford and Mallory Webster, conferred by phone with Plaintiffs' counsel, Jeanette Samuels. Stafford Decl. ¶ 13. During the January 14 conference, at the Moving Parties' request, the Moving Parties discussed that Mr. Pritzker would not be available to sit for a deposition because he lacks personal knowledge relevant to any Plaintiff's claims or allegations and a deposition would disrupt his official duties as the Governor of Illinois. *Id.* They further discussed Ms. Stratton's position that her deposition must be reasonably limited in time and scope, given that there is only a single claim for defamation against her in this matter. *Id.* Plaintiffs continued to insist on taking Mr. Pritzker's deposition and refused to reasonably limit Ms. Stratton's deposition. *Id.*

The parties were unable to resolve the discovery issues during the conference, and Mr. Pritzker and Ms. Stratton are in the unfortunate position of seeking the Court's assistance with this discovery issue. *Id.*

## III. BACKGROUND

### A. Plaintiffs Have Received Extensive Written and Documentary Discovery in this Case Over the Course of Many Months

Discovery has been underway for months, with Defendants providing Plaintiffs extensive written and documentary discovery, *even though* Plaintiffs have been uncooperative and unwilling for most of that time to engage in a meaningful conversation about the scope of discovery. *See* Stafford Decl. ¶ 14. Defendants collected many thousands of documents from 26 document custodians, then used search terms and a team of document review attorneys to review those documents and identify potentially responsive documents. *Id.* ¶ 15. In a series of rolling productions between September 2019 and January 2020, Defendants then produced nearly 6,000 pages of documents, including those related to the conditions of Plaintiffs' employment, the evaluation of their job performances and any corrective action, any complaints or reports they

146864000.1                                                    2

raised during their employment, and any discrimination or harassment complaints or reports by similarly situated employees. *Id.* ¶¶ 15–16.

Defendants also provided written responses to multiple sets of interrogatories and requests for production. *Id.* ¶ 17. And after months of Defendants offering to discuss Defendants' responses and the scope of Plaintiffs' requests, Plaintiffs finally met and conferred with Defendants in November 2019 about the discovery requests and Defendants' responses. *Id.* ¶ 18. After that conversation and the Court's second extension of discovery, Defendants supplemented many of their responses and made an additional production of documents. *Id.* Plaintiffs have not sought any written discovery or documents directly from Mr. Pritzker.[3] *Id.* ¶ 19.

**B.    Plaintiffs Finally Noticed Depositions After the Court Extended Discovery a Second Time to Address Plaintiffs' Intransigence**

As the Court is well aware, it has recently had to twice extend the discovery cutoff to address Plaintiffs' refusal to sit for depositions and other untimeliness in the discovery process. *See* Min. Entry, ECF No. 52 (Oct. 22, 2019); Min. Entry, ECF No. 59 (Nov. 26, 2019). After the Court's second extension, Plaintiffs in December 2019 noticed ten depositions, with most to occur in the final two weeks of January 2020. Stafford Decl. ¶ 4 Ex. A; Stafford Decl. ¶ 5, Ex. B. Although Plaintiffs are entitled to take depositions under Federal Rule of Civil Procedure 30, they never once indicated prior to their notice that they intended to take any depositions. Stafford Decl. ¶ 3. Specifically, Plaintiffs seek to depose Mr. Pritzker; Ms. Stratton; the Campaign; the former Campaign Manager, Anne Caprara; the former Deputy Campaign Manager, Quentin Fulks; and five non-senior employees with supervisory responsibilities. *See* Stafford Decl. ¶ 4, Ex. A; Stafford Decl. ¶ 5, Ex. B; Declaration of Quentin Fulks in Support of Motion for Protective Order ("Fulks Decl.") ¶ 7 They intend to depose the Campaign on Campaign policies and practices related to the investigation of employee misconduct and discipline and the Campaign's employee handbook. Stafford Decl. ¶ 4, Ex. A.

---

[3] The Moving Parties do not suggest that such discovery would be proper or unobjectionable, but only point out that Plaintiffs have not even sought discovery related to Mr. Pritzker through less intrusive means.

Mr. Pritzker and Ms. Stratton promptly objected to the deposition notices. Stafford Decl. ¶ 7, Ex. C. Mr. Pritzker objected that he lacks relevant personal knowledge of the matters in this case and is currently the sitting Governor of Illinois, and for those reasons asked Plaintiffs to confirm that they would no longer attempt to depose him.[4] *Id.* Ms. Stratton, the current sitting Lieutenant Governor of Illinois, requested that Plaintiffs agree to limit her deposition to a half-day (three hours) on subject matter related solely to the defamation claim. *Id.* Consistent with their pattern throughout the discovery process, Plaintiffs ignored completely those requests and did not respond. Stafford Decl. ¶ 8.

After the holidays, the Moving Parties again reached out to Plaintiffs about the intended depositions of Mr. Pritzker and Ms. Stratton. Stafford Decl. ¶ 7, Ex. C. They reminded Plaintiffs that they had objected to these two depositions and asked if they could assume that Plaintiffs agreed to no longer pursue Mr. Pritzker's deposition and to limit Ms. Stratton's deposition. *Id.*

Plaintiffs then responded, declining to abandon their efforts to depose Mr. Pritzker and to limit Ms. Stratton's deposition in any way. *Id.* They also promised that they would, at some later time, provide dates for a meet and confer, which the Moving Parties had requested because they intended to file a motion for protective order if the parties could not resolve the issue directly. *Id.* After Plaintiffs failed again to provide dates for a meet-and-confer, the Moving Parties sent two additional requests for available dates, as they wished to file the instant motion before the dates set out in Plaintiffs' deposition notice. Stafford Decl. ¶¶ 11–12; Stafford Decl. ¶ 7, Ex. C. On January 14, Plaintiffs finally provided their availability for a meet and confer later that day. Stafford Decl. ¶ 12. The parties could not reach agreement about Plaintiffs' intended depositions of Mr. Pritzker and Ms. Stratton. *Id.* ¶ 13.

---

[4] Mr. Pritzker notes that he is not a party to this lawsuit. Plaintiffs did not personally serve a subpoena under Rule 45. Instead, they simply sent the counsel of Defendants in this action a notice of his deposition. *See* Fed. R. Civ. P. 45.

**C.     Mr. Pritzker and Ms. Stratton Were the Key Figures of the Campaign**

From 2017 to the end of November 2018, the Campaign operated statewide to support the election in November 2018 of Mr. Pritzker as Governor of Illinois and Ms. Stratton as Lieutenant Governor. At its height, the Campaign had approximately 34 offices across Illinois and approximately 200 employees.[5] Fulks Decl. ¶ 4.

Mr. Pritzker and Ms. Stratton were not Campaign employees or officers, but as the candidates for Governor and Lieutenant Governor, occupied the highest ranks of the Campaign. Declaration of JB Pritzker in Support of Motion for Protective Order ("Pritzker Decl.") ¶ 9; Declaration of Juliana Stratton in Support of Motion for Protective Order ("Stratton Decl.") ¶ 9. In those roles, they participated in and made decisions about high-level campaign strategy and focused on campaigning throughout the state by engaging voters, supporters, and community members. Pritzker Decl. ¶ 6; Stratton Decl. ¶ 6. They conducted most of their day-to-day Campaign activities with one another and in coordination with senior-level Campaign staff. Pritzker Decl. ¶ 7; Stratton Decl. ¶ 7.

As the top figures in the Campaign, neither Mr. Pritzker nor Ms. Stratton had responsibility for the day-to-day operations of the Campaign, having delegated—as in all statewide campaigns—those matters to Campaign staff. Pritzker Decl. ¶ 9; Stratton Decl. ¶ 9; *see also* Fulks Decl. ¶ 5, Ex. A at Campaign_L000503; Fulks Decl. ¶ 6. In short, they focused on campaigning, not managing daily operational details. As such, they did not participate in hiring, onboarding, training, disciplining, or terminating field organizers such as Plaintiffs. Pritzker Decl. ¶ 10; Stratton Decl. ¶ 10. While Mr. Pritzker and Ms. Stratton periodically met with various Campaign staffers at Campaign events, they did not interact with Plaintiffs or other particular field organizers on a day-to-day basis. Pritzker Decl. ¶ 12; Stratton Decl. ¶ 12. They did not have a direct role in field operations, the area in which Plaintiffs worked. Pritzker Decl. ¶ 13; Stratton Decl. ¶ 13. They did not assign field organizers work, determine their job duties, or

---

[5] The Campaign ceased active operations at the end of November 2018. Fulks Decl. ¶ 3.

set office hours. Pritzker Decl. ¶ 13; Stratton Decl. ¶ 13. They did not evaluate field organizers' job performances. Pritzker Decl. ¶ 11; Stratton Decl. ¶ 11.

Mr. Pritzker and Ms. Stratton did not, as a general matter, decide how and where to allocate specific Campaign resources, such as where to open offices (and certainly did not participate in decisionmaking about whether to lease an office at one address or another). Pritzker Decl. ¶ 13; Stratton Decl. ¶ 13. They did not decide on or approve the content of employee trainings. Pritzker Decl. ¶ 13; Stratton Decl. ¶ 14. They also relied on Campaign staffers to assist them in managing their busy schedules, such as what events to attend or which Campaign offices to visit and how frequently. Pritzker Decl. ¶ 14; Stratton Decl. ¶ 15.

They were not responsible for overseeing, managing, or fulfilling human resources functions. Pritzker Decl. ¶ 15; Stratton Decl. ¶ 16. They were not part of the Campaign's formal reporting chain for alleged violations of Campaign policy or law, such as discrimination or harassment, and they did not have personal responsibility for investigating any such alleged violations. Pritzker Decl. ¶ 16; Stratton Decl. ¶ 16; *see also* Fulks Decl. ¶ 5, Ex. A at Campaign_L000503. Neither Mr. Pritzker nor Ms. Stratton received any reports or complaints from Plaintiffs that they understood to be a direct allegation that a Plaintiff had been subject to workplace discrimination or harassment. Pritzker Decl. ¶ 18; Stratton Decl. ¶ 17.

### D. Mr. Pritzker and Ms. Stratton Are Now the Highest-Ranking Officials in the State of Illinois

Mr. Pritzker is now the sitting Governor of the State of Illinois and Ms. Stratton the sitting Lieutenant Governor, elected to those offices on November 6, 2018, and assuming office on January 14, 2019. Pritzker Decl. ¶ 2. As Illinois's chief public official, Mr. Pritzker carries out the executive functions of Illinois's state government and works closely with the Illinois Legislature to accomplish the state's legislative agenda. Pritzker Decl. ¶¶ 2–3. Among other responsibilities as Lieutenant Governor, Ms. Stratton leads Illinois's Justice, Equity and Opportunity Initiative and chairs the Illinois Council on Women and Girls, the Governor's Rural Affairs Council, the Military Economic Development Council, and the Illinois River

Coordinating Council. Stratton Decl. ¶ 2. Consistent with their roles atop Illinois's state government, Mr. Pritzker and Ms. Stratton maintain very busy schedules attending to official business. Pritzker Decl. ¶ 3; Stratton Decl. ¶ 3. Mr. Pritzker's schedule is particularly busy this time of year as he prepares for the upcoming State of the State address at the end of this month and as the 2020 legislative session begins in Springfield, Illinois. Pritzker Decl. ¶ 3.

**E.     Mr. Pritzker and Ms. Stratton Are Not Parties to Plaintiffs' Discrimination and Harassment Claims**

Mr. Pritzker and Ms. Stratton are also not parties to Plaintiffs' discrimination and harassment claims. Mr. Pritzker was dismissed from the case entirely over nine months ago, after the Court ruled that Plaintiffs alleged no facts suggesting Mr. Pritzker had any personal involvement in any of the events Plaintiffs allege. *See* Order, ECF No. 44 (Apr. 5, 2019) at 9 (concluding that Plaintiffs "fail[ed] to make even bare conclusory allegations of personal involvement by the individually named Defendants."). The Court also concluded that Plaintiffs failed to allege any facts suggesting Ms. Stratton's personal involvement in alleged discrimination or harassment. *See id.* Accordingly, the Court allowed only the defamation claim—related apparently to a single press statement after Plaintiffs initiated this lawsuit—against Ms. Stratton to proceed. *See id.*

## IV.     ARGUMENT

**A.     Legal Standard**

The Court may issue a protective order for "good cause," which includes protecting an individual "from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). The Court must also limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Consistent with those principles, courts in this Circuit and elsewhere routinely limit "apex" depositions—the depositions of individuals who occupy the highest positions of an organization. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679–82 (7th Cir. 2002); *In*

*re Yasmin & Yaz*, No. 3:09-md-02100-DRH-PMF, 2011 WL 3759699, at *2 (S.D. Ill. Aug. 18, 2011). Apex depositions are inappropriate when the intended deponent "lacks personal knowledge" about the matters in the litigation or "when the requested information can be garnered from more knowledgeable subordinates." *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at *4 (E.D. Wis. Oct. 18, 2016); *see also Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods."). The "apex doctrine seeks to prevent a high-ranking" organizational figure "from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees from annoyance, embarrassment, oppression, or undue burden or expense." *Murillo*, 2016 WL 6090862, at *2 (quoting *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14–CV–0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (internal quotation marks omitted)). These protections exist because an apex deposition "creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C-05-4374-MMC, 2007 WL 205067, at *3 (N.D. Cal. Jan 25, 2007).

The potential for abuse is even greater when a plaintiff seeks the deposition of a high-ranking government official, even when the deposition would address events that occurred before the official assumed office. *See Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994); *Buono v. City of Newark*, 249 F.R.D. 469, 472 n.2 (D.N.J. 2008) (applying this doctrine to preclude the mayor's deposition even though the relevant events took place before the mayor assumed office). As with the more general apex doctrine, the deposition of a high-ranking official is appropriate only if the official has unique personal knowledge of relevant events and the plaintiff cannot obtain that information from another source. *See Bless v. Cook Cty. Sheriff's Office*, No. 13 C 4271, 2017 WL 1344522, at *2 (N.D. Ill. Apr. 12, 2017) ("Courts have accordingly denied motions to compel depositions of public officials where there is insufficient

146864000.1                                8

reason to expect the depositions to yield relevant evidence unobtainable through other means."). Even further special consideration is warranted in this context because such depositions often "serve[] little purpose other than to disrupt a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions." *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

To protect the Campaign's—and Illinois's—apex figures from harassing and unnecessary depositions, the Court should enter a protective order prohibiting Plaintiffs from taking Mr. Pritzker's deposition and reasonably limiting both the time and scope of Ms. Stratton's deposition.

**B. The Court Should Issue a Protective Order Prohibiting Plaintiffs from Deposing Mr. Pritzker and Limiting the Time and Scope of Ms. Stratton's Deposition**

Mr. Pritzker—the apex figure in the Campaign—should not be deposed in this matter. He has no unique personal knowledge relevant to any of the issues on which Plaintiffs might want to depose him. They allege racial discrimination and harassment. Mr. Pritzker did not make and was not involved in any employment actions or interactions that Plaintiffs allege to constitute discrimination or harassment on the basis of their race. And even assuming that Mr. Pritzker had any tangential information related to relevant facts or circumstances of Plaintiffs' employment, Plaintiffs could obtain the information by less-intrusive means than an apex deposition and from someone with more direct knowledge related to the issues and allegations Plaintiffs raise.

The Court should also limit Plaintiffs' deposition of Ms. Stratton—also a top figure in the Campaign—to no more than three hours in total and limit the subject matter to the defamation claim. Plaintiffs allege a defamation claim against Ms. Stratton, and so Defendants have not sought to prevent Ms. Stratton's deposition entirely. But while Ms. Stratton may have knowledge related to Plaintiffs' baseless defamation claim, she otherwise does not have personal, unique, or relevant knowledge about Plaintiffs' discrimination or harassment claims (which were dismissed against her).

### 1. Neither Mr. Pritzker Nor Ms. Stratton Has Unique Personal Knowledge Related to Plaintiffs' Allegations of Discrimination and Harassment

Mr. Pritzker has no personal knowledge about the topics on which Plaintiffs might wish to depose him. *See* Pritzker Decl. ¶ 19; *Bless*, 2017 WL 1344522, at *3 (entering protective order where the public official "provided sworn statements denying personal knowledge of the issues in the case").

In terms of the Campaign's general employment practices, Mr. Pritzker has no personal knowledge about the Campaign's hiring, onboarding, training, evaluation, disciplinary, or termination practices for field organizers. Pritzker Decl. ¶ 10. He also has no knowledge about the Campaign's employment practices specifically with regard to Plaintiffs. *Id.* ¶ 15. Mr. Pritzker did not have a direct role in or oversee field operations or human resources functions. *Id.* ¶¶ 13, 15. Campaign staffers had been delegated authority to investigate complaints and handle human resources matters. *Id.* ¶ 9.

He also has no unique—if *any*—information relevant to any complaints, reports, or incidents of alleged discrimination or harassment that he understands relate to any Plaintiff's treatment while employed by the Campaign. *Id.* ¶ 18. Mr. Pritzker was not in the Campaign's reporting structure for such complaints. *Id.* ¶ 16. Further, he interacted with Plaintiffs only minimally—if at all—during their employment, and he does not recall direct interactions with most of the Plaintiffs. *Id.* ¶ 17. And to the extent Mr. Pritzker has any information specific to this *litigation*, that information is subject to the attorney-client privilege and not discoverable through a deposition (or any other means). *See One Place Condo. LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2013 WL 788092, at *6 (N.D. Ill. Mar. 1, 2013).

On top of all that, Mr. Pritzker's dismissal months ago from this case further demonstrates that he has no personal knowledge to offer Plaintiffs. The Court held that Plaintiffs could not even muster factual *allegations* to suggest any personal involvement in the alleged discrimination and harassment. Order, ECF No. 44 (Apr. 5, 2019) at 9. Nothing has changed since then to suggest that Mr. Pritzker had any involvement in—and thus any related knowledge of—alleged events.

The same goes for Ms. Stratton. She too had no personal involvement day-to-day in Campaign operations, including employment issues related to non-senior staff or the investigation of personnel issues. Stratton Decl. ¶¶ 9, 10–11, 16. Nor did she receive any complaint or report from Plaintiffs that she understood to be a direct allegation about workplace discrimination and harassment on the Campaign or by a specific Campaign employee. Stratton Decl. ¶ 17.

The only unique personal knowledge Ms. Stratton may have would relate to the press statement that she understands underlies Plaintiffs' specious defamation claim. But even though deposing Ms. Stratton on that single topic may be warranted (and Ms. Stratton does not oppose being deposed on that topic), the Court should limit the time and scope of the deposition. *See* [Greater Birmingham Ministries v. Merrill, 321 F.R.D. 406, 414 (N.D. Ala. 2017)](limiting deposition "in time . . . and in subject matter to only those topics" on which the public official "has unique personal knowledge about which Plaintiffs have not already received substantial discovery"). Plaintiffs should not be allowed the opportunity to depose Ms. Stratton on matters about which she has no personal knowledge. Otherwise, Ms. Stratton would be subject to the same potential abuse inherent in all apex depositions and that courts strive to prevent.

> 2. **Even if Mr. Pritzker or Ms. Stratton Had Personal Knowledge Regarding Plaintiffs' Allegations of Discrimination and Harassment, Plaintiffs Can— And Have—Obtained Evidence Through Other Means**

Even if Mr. Pritzker or Ms. Stratton had any minimal knowledge relevant to Plaintiffs' discrimination and harassment claims, Plaintiffs can obtain—and indeed have likely already obtained—that information from other sources. As the Moving Parties have explained, Defendants have made extensive document productions in response to Plaintiffs' two sets of requests for production. Indeed, Defendants have produced several thousand pages of documents that Defendants identified as potentially responsive to the issues in this case. Those documents provide Plaintiffs with more than enough information about issues relevant to their claims. *See* [Last Atlantis Capital, LLC v. AGS Specialist Partners, No. 04 C 0397, 2013 WL 4759581, at \*6 (N.D. Ill. Sept. 4, 2013)](precluding apex deposition where "whatever knowledge or information

[the apex deponents] do possess generally about issues tangentially relevant to this case may be obtained (and has been obtained) from numerous other witnesses").

On top of that, Plaintiffs are set to depose former Campaign employees who may have personal knowledge of relevant events due to the positions they held on the Campaign. Those employees—who include the former Campaign Manager and Deputy Campaign Manager—are better suited to addressing the matters Plaintiffs raise in this lawsuit. Plaintiffs also plan to depose the Campaign itself, at which time Plaintiffs will be able to probe all nonprivileged "information known or reasonably available" to the Campaign. Fed. R. Civ. P. 30(b)(6). It would be inappropriate to require Mr. Pritzker and Ms. Stratton to be deposed when Plaintiffs can—and intend to—depose Campaign employees who had operational and supervisory responsibility and are more likely to have discoverable information. See LaPorta v. City of Chi., No. 14 C 9665, 2016 WL 4429746, at *2 (N.D. Ill. Aug. 22, 2016).

### 3. The Fact that Mr. Pritzker and Ms. Stratton Are Illinois's Two Highest-Ranking Elected Officials Further Warrants a Protective Order

The fact that Mr. Pritzker and Ms. Stratton are the highest-ranking elected officials in Illinois only bolsters the need for a protective order. See Warzon, 155 F.R.D. at 185 ("In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge."). In addition to the burden of having to sit for a deposition on matters about which they lack personal knowledge *and* which Plaintiffs can obtain sufficient information about through other means, such a deposition would also "interfere with" Mr. Pritzker's and Ms. Stratton's performance of their official duties. Mayes v. City of Hammond, Ind., No. 2:03-CV-379-PRC, 2005 WL 8170415, at *2 (N.D. Ind. Sept. 19, 2015). The time they would need to spend preparing and sitting for depositions would take away from time better dedicated to running Illinois's state government, particularly during this very busy time of year. Pritzker Decl. ¶ 3; Stratton Decl. ¶ 3. And, of course, allowing the depositions to go forward—in any format for Mr. Pritzker and without any limitation for Ms. Stratton—gives

Plaintiffs the opportunity to harass Mr. Pritzker and Ms. Stratton and probe completely irrelevant and sensitive matters that have nothing to do with Plaintiffs' claims and allegations.

**C.     In the Alternative, the Court Should Defer Ruling on this Motion Until Plaintiffs Take the Other Noticed Depositions or At Least Permit Plaintiffs Only Written Discovery of Mr. Pritzker and Ms. Stratton as to the Discrimination and Harassment Claims**

Should the Court be disinclined to grant at this time the requested protective order, the Moving Parties ask that the Court stay the depositions of Mr. Pritzker and Ms. Stratton for the time being and defer ruling on the motion for a protective order until after Plaintiffs conduct other depositions.[6] *See Affinity Labs of Tex. v. Apple, Inc.*, No. C 09–4436 CW (JL), 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011) ("Courts regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness."). Then, it will be even clearer that Plaintiffs have been able to obtain the information they seek through individuals who would have been in a position on the Campaign to have knowledge about Plaintiffs' employment.

If the Court denies the request for a protective order preventing the depositions, it should nonetheless order that any discovery of Mr. Pritzker's and Ms. Stratton's knowledge of events related to Plaintiffs' allegations of discrimination and harassment be by no more than seven written interrogatories or written deposition questions. *See* Fed. R. Civ. P. 33; Fed. R. Civ. P. 31. Even when plaintiffs are entitled to discovery of an apex figure's knowledge, courts often require plaintiffs to conduct that discovery through written means to alleviate the potential for abuse and the intrusiveness of a live deposition. *See Martin v. Cook Cty., Ill.*, No. 17 C 2330, 2018 WL 6990674, at *1–2 (N.D. Ill. Sept. 28, 2018) (allowing interrogatories of public official to "probe his relevant personal knowledge" before ultimately concluding a deposition was unwarranted). The Court should do the same here, if it opts to grant alternative relief.

---

[6] If the Court believed this route were appropriate, discovery should only remain potentially open—subject to the Court's ultimate ruling—as to this narrow issue. All other discovery should conclude consistent with the currently scheduled January 31, 2020, cutoff.

## V. CONCLUSION

Defendants respectfully request that the Court enter a protective order (1) prohibiting Plaintiffs from deposing Mr. Pritzker and (2) limiting the deposition of Ms. Stratton to no more than three hours and the subject matter of that deposition to the defamation claim. In the alternative, they request that the Court either (1) stay the depositions of Mr. Pritzker and Ms. Stratton and defer ruling on whether and under what terms those depositions may proceed until after Plaintiffs depose the other Campaign witnesses or (2) order that any discovery of Mr. Pritzker and Ms. Stratton into Plaintiffs' discrimination and harassment allegations and claims be by no more than seven written interrogatories or written deposition questions.

Dated: January 15, 2020            Respectfully Submitted,

                                         **JB PRITZKER FOR GOVERNOR, JULIANA STRATTON, AND CAITLIN PHARO**

                                         By:     */s/ William B. Stafford*
                                                       One of Their Attorneys

                                                       William B. Stafford
                                                       PERKINS COIE LLP
                                                       1201 Third Avenue, Suite 4900
                                                       Seattle, WA 98101-3099
                                                       Tel: (206) 359-8000
                                                       Fax: (206) 359-9000
                                                       WStafford@perkinscoie.com

## CERTIFICATE OF SERVICE

I, William B. Stafford, certify that on January 15, 2020, a copy of the foregoing was sent via the Court's electronic filing system and email to the following:

| | |
|---|---|
| Jeanette Samuels<br>SAMUELS & ASSOCIATES, LTD.<br>2925 S. Wabash Avenue, Suite 104<br>Chicago, Illinois 60616<br>Tel: (872) 588 – 8726<br>Fax: (872) 444 – 3011<br>sam@chicivilrights.com | Shay T. Allen<br>THE LAW OFFICE OF SHAY T. ALLEN<br>19150 S. Kedzie Ave., Ste. 201<br>Flossmoor, IL 60422<br>Tel: (708) 960-0113<br>sallen@attorneyshaytallen.com |

By: */s/ William B. Stafford*

146864000.1