IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAXWELL LITTLE, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 C 6954 |
| | ) | |
| v. | ) | District Judge Virginia M. Kendall |
| | ) | |
| JB PRITZKER FOR GOVERNOR, *et al.*, | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendants. | ) | |

### ORDER

Defendant's motion for protective order [64] is granted.

### STATEMENT

Defendant Juliana Stratton ("Stratton") and non-party JB Pritzker ("Pritzker") have brought this motion for a protective order to limit plaintiffs' proposed depositions of both individuals. Plaintiffs brought this action against the JB Pritzker for Governor campaign and various individuals associated with the campaign for three counts of harassment, discrimination, and retaliation pursuant to 42 U.S.C. § 1981. [28]. Plaintiffs have also brought a defamation claim against Stratton. Ms. Stratton is the Lieutenant Governor of Illinois; Mr. Pritzker is the state's Governor. On April 5, 2019, the District Court dismissed the retaliation claim in its entirety and also dismissed the remaining § 1981 claims against both Stratton and Pritzker. Accordingly, the Governor is no longer a party to this case, while the Lieutenant Governor remains a defendant only for the defamation claim.

In her motion for protective order, Stratton does not object to being deposed by plaintiffs. She asks, however, that the deposition be limited to three hours and be restricted to questions related to the defamation claim. Pritzker asks the Court to prohibit plaintiffs from deposing him altogether. In the alternative, both individuals request that the Court (1) defer ruling on whether their depositions should go forward until plaintiffs have completed their depositions of other witnesses, or (2) permit them to be deposed by written questions with no more than seven written deposition questions.

### LEGAL STANDARD

Rule 26(c) provides that protective orders may address "matters relating to a deposition" and that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating why the order should be

entered. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd*., 133 F.Supp.3d 1079, 1084 (N.D.Ill. 2015).

Here, plaintiffs seek depositions from Governor Pritzker and Lieutenant Governor Stratton, the two highest ranking officials in Illinois' state government. When such "apex" depositions are sought, courts may protect high-level executives from being deposed when any of four circumstances exist: (1) the official has "no unique personal knowledge of the matter in dispute"; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's other duties. *Murillo v. Kohl's Corp*., No. 16-CV-196, 2016 WL 6090862, at *2 (E.D.Wis. Oct. 18, 2016); *In re Yasmin and Yaz,* No. 3:09-md-02100, 2011 WL 3759699, at *2 (S.D.Ill. Aug. 18, 2011); *see also Coleman v. Schwarzenegger*, No. CIV S-90-520, 2008 WL 4300437, at *2 (N.D.Cal. Sept. 15, 2008) (finding that the apex doctrine applies to a state Governor). "As such, the apex doctrine . . . is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14 C 779, 2016 WL 1613489, at *1 (N.D.Ill. April 22, 2016) (internal quotes and citation omitted).

## **DISCUSSION**

### **Governor Pritzker's Deposition**

The factors that govern whether a high-level official should be deposed show that Governor Pritzker should not be required to sit for an oral deposition. The record strongly suggests that Pritzker – who is no longer a party to this case – does not have unique personal knowledge of the events that plaintiffs allege. The campaign employed approximately 200 individuals across 34 offices in Illinois. The campaign's manager Quentin Fulks states in his declaration that an email address was created to which employees could send their employment-related concerns. The address forwarded these emails to "certain" campaign employees whom Fulks does not identify but not to Pritzker or Stratton. (Dckt. # 69 at ¶ 6). Pritzker and Stratton also lacked daily supervisory responsibilities; instead, five non-senior campaign employees supervised the campaign's field organizers. (*Id*. at ¶ 7).

Plaintiffs have made no showing of why Pritzker should be deposed given these facts. Plaintiffs claim that plaintiff Eric Chaney "attempted" to talk to Pritzker about his employment complaints at an unidentified point in the campaign but Pritzker "immediately walked off." (Dckt. # 75 at 4). Pritzker's responsiveness, however, is not relevant to the apex analysis; rather, the issue is whether he had unique knowledge of the matter in question. Plaintiffs' claim that Pritzker "walked off" instead of listening to Chaney's complaint suggests that he does not.

Plaintiffs have also provided an unauthenticated news article reporting that unnamed campaign staff members voiced some discrimination complaints to Pritzker and Stratton when the candidates reached out at some point to African-American campaign workers. However, not only does this article fail to identify the persons involved, the content of their communication, or the length or conditions under which the communication took place, it actually undermines plaintiffs' argument through its incorporation of denials by both Pritzker and Stratton that

2

anyone ever voiced to them concerns regarding racism and harassment. (Dckt. # 75-1, at 2). Furthermore, Pritzker states in his sworn declaration that he "was rarely made aware" of any personnel matters in the campaign; had no direct role in human resource issues; and was not responsible for receiving or investigating workplace complaints. (Dckt. # 67 at ¶¶ 15-16). In any event, even if Pritzker was made aware of some of plaintiffs' allegations, mere knowledge of events is not sufficient to require a deposition: the officer must have "unique" personal knowledge. *See, e.g., In re Yasmin and Yaz,* 2011 WL 3759699, at *2 ("district courts may preclude the depositions of high-ranking executives if the witness does not possess unique or specialized knowledge relevant to the litigation") (citing cases). No evidence indicates that Pritzker has such information.

The second and third factors also support exempting the Governor from an oral deposition. The motion for protective order states that plaintiffs will depose former campaign employees and a Rule 30(b)(6) witness who have more detailed information about the allegations that plaintiffs make in their complaint. These deponents presumably have greater knowledge about the campaign's day-to-day operations, and plaintiffs do not address why they will not be able to obtain the information they seek from these witnesses. Stratton and Pritzker also note that they have produced extensive documents to plaintiffs that cover much of the ground that their own depositions would address. Although the Court has no information on what those documents contain, plaintiffs have not shown why they would be insufficient.

Fourth, sitting for an oral deposition would clearly impose a hardship on the Governor. Pritzker was preparing for his State of the State address at the time of his sworn declaration. (*Id*. at ¶ 3). That date has now passed, but Pritzker further states that his official duties require his full-time attention even when he spends personal time with his family. (*Id*.).

These factors persuade the Court that Governor Pritzker should not be required to sit for an oral deposition because "there is insufficient reason to expect the deposition[] to yield relevant evidence unobtainable through other means." *Bless v. Cook County Sheriff's Office,* No. 13 C 4271, 2017 WL 1344522, at *2 (N.D.Ill. Apr. 12, 2017). The Court further finds that a deposition by written questions is no more likely to result in relevant evidence than an oral deposition would. Pritzker's sworn declaration makes clear that he had no substantive knowledge of employment conditions – much less a unique understanding of events. Plaintiffs' claims to the contrary and their news clipping are simply too thin of a reed on which to require the State's chief executive to divert time from his demanding duties to comply with the requirements under Rule 31 for a deposition by written questions. *See Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999) (affirming the district court's decision to deny request to depose the Illinois Attorney General where the court concluded that the deposition "would have served little purpose other than to disrupt a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions.") (internal quotation marks omitted).

### **Lieutenant Governor Stratton's Deposition**

Like Pritzker, Stratton has also submitted a sworn declaration stating that she had no formal responsibility for receiving information about workplace conditions and did not supervise the campaign's employees. (Dckt. # 68 at ¶¶ 10, 13, and 16). Plaintiffs claim that Stratton was

3

present at an event where staff members raised discrimination concerns to her.  Plaintiffs also include in their response brief a social media post from Stratton stating that she stopped at the Burr Ridge, Illinois campaign center on September 12, 2018.  (Dckt. # 75 at 6).  However, plaintiffs admit that they "cannot prove that Lt. Governor Stratton ever actually received the complaints of which [they] are aware." (Dckt. # 75 at 5).   Moreover, as with Pritzker, no evidence shows what Stratton was told or why she would have more knowledge than the campaign's field managers have of the day-to-day conditions that the campaign's employees faced.  Plaintiffs have therefore failed to demonstrate why Stratton has any "unique personal knowledge" of their discrimination claims.  That fact – combined with Stratton's high-level duties as Lieutenant Governor – persuades the Court in consideration of the authority cited above that she should not be deposed concerning plaintiffs' discrimination claims.

Stratton does not ask the Court to exempt her from being deposed on the defamation claim.  Instead, she asks that the deposition be limited to three hours and to questions only related to the defamation issue.  Plaintiffs do not address the length of Stratton's deposition or discuss the defamation topic in their response brief.  In consideration of the circumstances, the Court grants the motion on this issue.  *See, e.g., Greater Birmingham Ministries v. Merrill,* 321 F.R.D. 406, 414 (N.D.Ala. 2017) (imposing time and subject matter limitations on the deposition of a public official to allow plaintiffs to probe his "unique personal knowledge about which [they] have not already received substantial discovery").  Plaintiffs may depose Lieutenant Governor for three hours. They may address background issues that are relevant to carrying forward with a meaningful deposition but are otherwise restricted to questioning Stratton to matters concerning the defamation claim pending against her.

The Court notes that the District Court has set fact discovery to close on February 28, 2020.  [74].  Plaintiffs should therefore quickly notice Stratton's deposition and defendants' counsel should take all reasonable steps to make her available for the deposition she has agreed to before the cutoff date.

ENTER:

_____
**Hon. Jeffrey Cummings
United States Magistrate Judge**

**Dated:  February 21, 2020**

4