IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MAXWELL LITTLE,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | No. 18 C 6954 |
| | ) | |
| v. | ) | **District Judge Virginia M. Kendall** |
| | ) | |
| **JB PRITZKER FOR GOVERNOR,** *et al.*, | ) | **Magistrate Judge Jeffrey Cummings** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this action against the JB Pritzker for Governor Campaign ("the Campaign") and various individuals associated with it for three counts of harassment, discrimination, and retaliation pursuant to 42 U.S.C. § 1981. (Dckt. #28). Plaintiffs have also brought a defamation claim against Julianna Stratton. Ms. Stratton is the Lieutenant Governor of Illinois; Mr. Pritzker is the state's Governor. On April 5, 2019, the District Court dismissed the retaliation claim in its entirety and also dismissed the remaining §1981 claims against both Stratton and Pritzker. (Dckt. #44).

On February 28, 2020, plaintiffs filed a motion to compel a subpoena response from non-party East Lake Management Group, Inc. ("East Lake"). Plaintiffs allege in their Second Amended Complaint ("Complaint") that the Campaign engaged in race discrimination and harassment, in part, by providing its minority workers with unsafe working conditions. (Dckt. #26 at ¶¶26(c), 45). Plaintiffs claim that East Lake was the landlord of the Campaign's South Side office in Chicago and seek all communications between East Lake and the Campaign, all maintenance and service requests about the leased property, and all lease agreements East Lake

1

made with the Campaign.  On March 10, 2020, East Lake filed an opposition/cross-motion to quash plaintiffs' subpoena.  (Dckt. #101).

On February 29, 2020, plaintiffs also filed a motion to compel a subpoena response from non-party attorney Jeannil Boji.  Ms. Boji was hired by the Campaign to conduct a cultural sensitivity training session on September, 12, 2018.  Plaintiffs allege in their Complaint that "the person hired by the campaign to do the training used racial epitaphs at [the] cultural sensitivity training."  (Dckt. #26 at ¶33) (emphasis removed).  Plaintiffs ask Boji to produce all communications between her and the Campaign as well as a list of all other organizations before whom she has given presentations about diversity and non-discrimination.

The Court rules on these motions under District Judge Virginia Kendalls's referral for a decision pursuant to N.D. Ill. Rule 72.1.  (Dckt. ##79, 96).  Based on the parties' briefs, the Court finds that plaintiffs' motions to compel subpoena responses [Dckt. ##82, 83] are denied and East Lake's motion to quash plaintiffs' subpoena [Dckt. #101] is granted.

**I.      LEGAL STANDARD**

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena directing a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession."  Fed.R.Civ.P. 45(a)(1)(A)(iii).  The ability to use subpoenas to obtain information from non-parties is not unlimited, however; Rule 45 provides that the issuer of "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed.R.Civ.P. 45(d)(1).  Rule 45 also instructs courts that they "must protect" non-parties "from significant expense resulting from compliance" with a subpoena.  Fed.R.Civ.P. 45(d)(2)(B)(i)&(ii).

Consequently, "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D.Ill. Dec. 3, 2015) (internal quotation marks and citation omitted). Indeed, "[i]n keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States ex rel. Tyson v. Amerigroup Illinois, Inc.,* No. 02-C-6074, 2005 WL 3111972, at *4 (N.D.Ill. Oct. 21, 2005); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D.Ill. 2013) (same). "Non-parties are afforded this consideration because they have a different set of expectations than parties. . . . While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *HTG Capital Partners, LLC v. Doe(s),* No. 15-C-2129, 2015 WL 5611333, at *3 (N.D.Ill. Sept. 22, 2015) (citation and internal quotation marks omitted).

In addition to the non-party status of the subpoenaed entity, courts consider a number of other factors when determining if the burden imposed by a subpoena is "undue." These factors include whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.,* No. 13 C 408, 2013 WL 1883204, at *2 (N.D.Ill. May 6, 2013) (citing to *Northwestern Memorial Hospital v. Ashcroft,* 362 F.3d 923, 927 (7th Cir. 2004)). Furthermore, a court may limit discovery pursuant to Rule 26(b)(2)(c) if it determines that the requested documents can be obtained from a more convenient or less

burdensome source, the requesting party had an opportunity to obtain the information through the normal discovery process, or the information sought is cumulative or duplicative of other discovery. *Earthy, LLC v. BB&HC, LLC*, No. 16 C 4934, 2017 WL 4512761, at *3 (N.D.Ill. Oct. 10, 2017).

## II.     DISCUSSION

### A.     Plaintiffs' Subpoena to Jeannil Boji Was Improperly Served

Jeannil Boji is an attorney with law firm Perkins Coie LLP in Chicago. As part of her practice, Boji gives legal advice concerning sexual harassment and race discrimination both by direct advice to clients and by providing training sessions. (Dckt. #98 at ¶4). The Campaign hired Boji in 2017 for legal advice and to conduct workplace training seminars. (*Id*. at ¶5). Plaintiffs claim that on September 12, 2018, the Campaign held a cultural sensitivity training session that Boji administered and during which she allegedly "used a racial epithet and also had it written on her presentation." (Dckt. #83 at ¶¶2-3). Plaintiffs do not explain what this epithet was but state that they are entitled to discover whether the September 12, 2018 event was "purely pretextual" and whether Boji is a trained professional or merely "someone who was available and . . . read off of slides." (*Id*. at ¶ 18).

On January 29, 2020, the Clerk of Court issued a subpoena directed to Boji with a rider requiring her to produce by February 21, 2020 (1) all communications between Boji and the Campaign, and (2) a list of "organizations, businesses, or institutions that you presented to about non-discrimination, diversity and inclusion, and eliminating bias." (Dckt. #83 at Ex. 1). On February 10, 2020, private detective David Jackson completed a sworn proof of service stating that he received the subpoena on February 3 and that he left it on February 10 "in the mailbox at the home address of attorney Boji after several failed attempts at personal service." (*Id*.).

More specifically, Jackson states that he:

>attempted service on Boji at her law firm – Perkins Cole [sic], LLP – at 131 S. Dearborn, Chicago, IL on 2-5-2020 and was refused entry to the building by security person Xavier Cornelio. Cornelio called Perkins Cole and announced R/I's [reporting investigator's, *i.e.* Jackson] effort to serve the subpoena. The firm refused service and refused to identify when Boji was scheduled to be in the office. R/I skip traced Boji and went to her home – [address omitted]. The home is owned by Boji and has a locked wrought iron gate preventing access to the front door. R/I rang the bell multiple times on 2-9 at 11:00 a.m. and 2-10-2020 at 7:30 p.m. R/I also called the cell number listed to Boji [number omitted] to no avail.

(Dckt. #83 at Ex. 1). Boji states in her sworn declaration that she returned home on the night of February 12, 2020 – two days after Jackson left the subpoena – and discovered a subpoena "that someone had apparently at some point stuck in the slot of a locked mailbox outside my gated residence." (Dckt. #98 at ¶10).

Acting on behalf of Boji, defendants argue that the Court should deny plaintiffs' motion because plaintiffs failed to meet and confer with defendants before filing it, and the requested material is protected by the attorney-client privilege and the work product doctrine. The Court does not address these arguments because it agrees with defendants' third claim that the subpoena is not enforceable because it was improperly served on Boji.

"Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed.R.Civ.P. 45(b)(1). Personal service is not necessary because certified mail through the United State Postal Service can suffice. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012). "When delivery options other than USPS certified mail or personal service are used, however, courts within the Seventh Circuit must determine if the method was a sensible option that satisfies the requirement of delivering a copy to the named person." *Achors v. FCA US, LLC*, No. 15 CV 02052, 2017 WL 9531998, at *2 (S.D.Ind. Oct. 19, 2017) (internal quotation marks and citation omitted).

5

Courts often look to the service provisions of Rule 5(b) when the subpoena is served on a non-party. *See Stepp v. Rexnord Indus., Inc.*, No. 1:13-CV-00683, 2014 WL 3866135, at *2 (S.D.Ind. Aug. 5, 2014). Rule 5(b) provides six options for serving documents other than by service to an attorney representing a party:

(A) handing it to the person;

(B) leaving it:

(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address--in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing--in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing--in which event service is complete when the person making service delivers it to the agency designated to make delivery.

Fed.R.Civ.P. 5(b)(2)(B).

Plaintiffs did not comply with any of these requirements when they attempted to serve the subpoena on Boji. Rule 5(b) only authorizes service at a person's home when his or her office is closed and, when that condition is met, requires delivery to "someone of suitable age and discretion who resides there." Fed.R.Civ.P. 5(b)(B)(ii). Plaintiffs did not follow this directive when they left the subpoena at Boji's home, and it is well established that a subpoena left in a

6

non-party's mailbox cannot be enforced because it has been improperly served. *See Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 381 (S.D.N.Y. 2011) (quashing a subpoena left in a mailbox as improperly served under the Federal Rules and unauthorized by the court); *see also United States v. Philip Morris Inc.,* 312 F.Supp.2d 27, 37-38 (D.D.C. 2004) (subpoenas left in the Department of Justice's mailroom or with the Department's support staff did not constitute "personal service" on certain of the Department's attorneys under Rule 45(b)(1); *Achors*, 2017 WL 6015436, at *2 & n.5 (rejecting "nail and mail" service in which "a copy is left at the service location, with a second copy sent in the mail").

Plaintiffs do not defend their method of service or cite any authority to support its adequacy. Plaintiffs state, however, that Boji's law firm refused to allow the process server to "come up and serve her" and that "[o]n multiple occasions, when Ms. Boji was at home, she refused to answer the door and accept service." (Dckt. #83 at 2). The clear implication of these claims is that Boji attempted to evade service. Although plaintiffs do not raise the issue directly, an alternative means of serving a subpoena can be appropriate "once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort." *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F.Supp. 2d 752, 754 (E.D.Mich. 2011). That includes situations in which the person on whom service is sought attempts to evade a process server. *See V5 Techs. v. Switch, Ltd.*, No. 2:17 CV 02349, 2019 WL 7489860, at *2 (D.Nev. Dec. 20, 2019) ("When a subpoenaed person hinders the service process by fleeing or otherwise obstructing the process server, effective service may be completed by the process server leaving a copy of the papers for the subpoenaed person.").

Even if plaintiffs are attempting to make such an argument, no evidence supports an inference that Boji tried to avoid service by detective Jackson. Plaintiffs imply that Boji was in

her law office on February 5, 2020 when Jackson was refused entrance. Jackson, however, states that the law firm would not tell him when Boji was scheduled to be in her office, thereby indicating she was *not* there when he arrived. Boji - - an officer of the court - - confirms Jackson's statement by asserting in her declaration that she was not in her office when he attempted to enter. (Dckt. #98 at ¶15); *see Fuery v. City of Chicago,* 900 F.3d 450, 454 (7th Cir. 2018) (recognizing "a trial judge's faith that she can rely upon the lawyers before her – officers of the court – to set forth a fair and accurate presentation of the facts and law").

Plaintiffs also claim that Jackson tried to serve Boji "on multiple occasions" when she was at home and that she willfully "refused to answer the door and accept service." (Dckt. #83 at 2). The evidence submitted, however, does not support these assertions - - which cast unwarranted aspersions on Boji. Jackson states that he only went to Boji's home twice – not multiple times – on February 9 and February 10 before deciding to put the subpoena in her mailbox. (*Id*. at Ex. 1). Notably, Jackson makes no representation about whether Boji was home when he rang her doorbell on these two days. For her part, Boji states under penalty of perjury that she was not at home when the subpoena was left, was not "aware of anyone coming to my house" to deliver service, and does "not recall doorbell rings or knocks that I ignored." (Dckt. #98 at ¶¶11, 14).

"Proper service of process 'is not some mindless technicality.'" *Williams v. GEICO Corp.*, 792 F.Supp.2d 58, 65 (D.D.C. 2011), *quoting Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir.1991). Plaintiffs overlook that the fundamental purpose of properly serving a subpoena is to make certain that the recipient receives it. *See*, *e.g.*, *Bozo v. Bozo*, No. 12 CV 24174, 2013 WL 12128680, at *1 (S.D.Fla. Aug. 16, 2013) ("Rule 45 does not require personal service, but rather requires service reasonably calculated to insure receipt of the subpoena by the

witness."). Leaving a subpoena in a mailbox falls short of that standard where, as here, the process server merely showed up at Boji's law firm once and then appeared at her home twice on two consecutive days. *Cf. V5 Technologies*, 2019 WL 7489860, at *2 (finding that 11 attempts at home service constituted evasion) *with OceanFirst Bank*, 794 F.Supp.2d at 754 (stating that four attempts to serve a subpoena at a home during a one-week period was not grounds for alternative service absent evidence that the receiving party was at home). Plaintiffs have presented no evidence suggesting that Boji was even aware that they were attempting to effect service on her. The Court therefore finds that the method that plaintiffs used to serve their subpoena on non-party Boji was improper, and their motion to enforce the subpoena is therefore denied.

**B.     Plaintiffs' Subpoena to East Lake is Not Enforceable and Should Be Quashed**

On January 28, 2020, plaintiffs also issued a subpoena to non-party East Lake that sought four categories of documents: (1) all communications with the Campaign, (2) all communications with any agent of the Campaign, (3) all lease agreements with a Campaign agent, and (4) copies of all maintenance or service requests for any property that East Lake may have leased or rented to the Campaign. (Dckt. #82 at Ex. 1). On February 19, 2020, East Lake objected to the subpoena on multiple grounds including that plaintiffs failed to take reasonable steps to avoid imposing an undue burden or expense upon East Lake, the information sought was outside the applicable scope of discovery, the requests were overbroad, and that plaintiffs could have – but failed – to obtain the requested information and documents from the Campaign. (Dckt. #82 at Ex. 2).

After a consideration of the relevant factors, the Court finds for the reasons specified below that the subpoena would subject East Lake to an undue burden within the meaning of Rule

45(d)(1). The Court further finds that the pertinent considerations under Rule 26(b)(2)(c) weigh against enforcement of the subpoena. Accordingly, the Court will grant East Lake's motion to quash and deny plaintiffs' motion to compel.

> **1. Plaintiffs have failed to explain how the materials sought by their subpoena are relevant to the parties' claims or defenses**

First, plaintiffs have not sufficiently explained why the materials that they seek through this subpoena are relevant to the parties' claims or defenses within the meaning of Rule 26(b)(1). Nor have plaintiffs explained why they have a substantial need for these materials. In their motion (Dckt. #82), plaintiffs assert that emails produced during discovery show that the Campaign communicated with "other landlords" about maintenance issues such as painting over mold at one of the Campaign's offices but that no e-mails have been produced to date by defendants that reflect communications with East Lake, the landlord for the Campaign's South Side office.[1] Plaintiff's further assert that records produced in discovery "reflect . . . significant problems with the structural integrity of the South Side Office." These problems presumably relate to the pictures plaintiffs attached to their motion of brown water marks in an office together with two email threads between Campaign employees suggesting that someone might have been asked to call Elzie Higginbottom (the CEO of East Lake). (Dckt. #82 at Ex. 3).

It is unclear how plaintiff's concern about the "structural integrity" of the Campaign's South Side office relates to their claims against defendants. In their Complaint, plaintiffs allege that the Campaign denied its African-American and Latino field organizers "a safe place to work." (Dckt. #28, ¶26(c)). The Complaint makes clear that the reason plaintiffs believe that the South Side office was not safe is because it was in an "unsafe location" that was surrounded by

---

[1] East Lake leased a property located at 5401 S. Wentworth Avenue in Chicago to the Campaign for a seven-month period starting on September 1, 2017 and ending on March 31, 2018. (Dckt. #101 at 3). This property is the South Side, or Region 6, office to which plaintiffs refer.

violent crime. (Dckt. #28, ¶¶45-49). Concerns about incidents of criminal activity in the neighborhood surrounding a building have nothing to do with the structural integrity of the building itself, particularly as it relates to the apparent ceiling leaks shown by plaintiffs' photographs.

### 2. Plaintiffs' subpoena is overly broad in scope and unbounded by any time period limitations

Second, the document requests in plaintiffs' subpoena are expansive in scope and contain no time period limitations. Plaintiffs seek *all* communications, leases, and service agreements between East Lake and the Campaign. It is fundamental that discovery requests that "encompass an unlimited range of information" as plaintiffs' subpoena does in this case are overly broad. *Earthy*, 2017 WL 4512761, at *3; *see also Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *5 (N.D.Ill. May 3, 2002) (finding that a subpoena was overly broad where it sought "all documents relating to any claim, complaint or arbitration, and documents relating to hiring, use of apprentices and sponsorship of individuals of membership in a trade union"). Documents covering all service matters could range from serious issues involving a building's structure to routine requests such as heating and air conditioning matters that would almost certainly have no relevance to plaintiffs' "structural integrity" claim. More problematically, plaintiffs' demand for all communications between the Campaign and East Lake is unlimited in scope and could cover everything from contract price negotiations to interpersonal email "chatter" that would have no relation to what plaintiffs claim they are seeking.

11

### 3.   Plaintiffs' proposed modification of their subpoena is insufficient and untimely

In their motion, plaintiffs make some attempt to modify the subpoena's scope by claiming that "upon information and belief" East Lake's only involvement with the Campaign concerned the South Side office and that "any and all correspondence would be related to that one issue." (Dckt. #82 at 3). It is true that Rule 45 allows courts to "modify a subpoena that . . . subjects a person to undue burden," Fed.R.Civ.P. 45(d)(3)(A)(iv), and modifying a subpoena is ordinarily preferable to quashing it outright. *See Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004); *Linder v. Nat. Sec. Agency*, 94 F.3d 693, 698 (D.C.Cir. 1996) (stating that "a modification of a subpoena is generally preferred to outright quashing"). However, the modification of a subpoena is warranted where the modification will "remove its objectionable features," *Ghandi v. Police Dep't of City of Detroit,* 74 F.R.D. 115, 117 (E.D.Mich. 1977), and the Court finds that plaintiffs' proposed modification fails to cure the subpoena's undue burden on East Lake.

In particular, limiting the subpoena to the South Side office reduces the problems noted above but does not eliminate them. Plaintiffs are still seeking *all* communications between East Lake and the Campaign about this office without addressing the communications' content or time frame – terms that plaintiffs have not asked the Court to restrict. As a result, plaintiffs' proposal would require East Lake to endure the burden of reviewing everything sent or received from the Campaign and its agents that was related to the South Side office without limiting these communications to what plaintiffs claim is the real issue: the building's "structural integrity."

Furthermore, plaintiffs' effort to narrow the scope of the subpoena, while constructive, is too little, too late. Plaintiffs had a duty under Local Rule 37.2 of the Northern District of Illinois to confer with East Lake to try to find a compromise *before* filing their motion to compel. In

12

particular, that Rule directs a party that wishes to file a motion to compel to meet and confer in person or by phone with opposing counsel regarding the discovery dispute, to describe the filing party's compliance with the Rule's directives in detail, and – if the conference could not be arranged – to "recite the efforts made by counsel to engage in consultation." N.D.Ill. L.R. 37.2. These requirements are mandatory, *Doyle v. City of Chicago*, 943 F.Supp.2d 815, 826 (N.D.Ill. 2013), and are designed "[t]o curtail undue delay and expense in the administration of justice[.]" N.D.Ill. L.R. 37.2. The failure to comply with Local Rule 37.2, which applies to motions to enforce a subpoena as well as motions seeking responses to interrogatories and document production (*Parker*, 291 F.R.D. at 184), is in itself grounds to deny a discovery motion.

Plaintiffs have disregarded all of the Local Rule's requirements and do not cite any effort they made to meet and confer with East Lake prior to filing this motion. That is surprising because plaintiffs have attached to their motion a February 19, 2020 letter from East Lake outlining its objections to the subpoena in substantial detail. (Dckt. #82 at Ex. 2). This letter invited plaintiffs' counsel to contact East Lake's counsel about East Lake's objections. *Id*. This letter also placed plaintiffs on notice that East Lake would seek sanctions under Rule 45(d)(1) if they did not withdraw their subpoena. (*Id.*). Had plaintiffs' counsel engaged with East Lake about the subpoena, they likely would have modified the subpoena's scope or potentially withdrew the subpoena entirely (as East Lake urged them to do). Instead, plaintiffs filed this motion to compel in disregard of both the Local Rule and Rule 45's mandate that they take "reasonable steps to ensure the subpoena would not result in an undue burden." *Elliot*, 2015 WL 1567901, at *6.

### 4. Plaintiffs served their subpoena on East Lake without first fully exercising their opportunity to obtain the subpoenaed materials from the Campaign

Although it is not entirely clear from their motion, it appears that plaintiffs served a discovery request upon the Campaign to obtain the materials that they have now subpoenaed from East Lake. In their motion, plaintiffs assert that the Campaign produced "only one email thread that indicates someone may have called the owner of Eastlake about the problems with the office back in March of 2018." (Dckt. #82 at 2). Plaintiffs further assert that the Campaign "should produce any records they may have" related to the South Side office (*Id.*) yet plaintiffs fail to explain why they have not brought a motion to compel the Campaign to do so. (Dckt. #82 at 2). As East Lake points out, plaintiffs have had ample opportunity to explore all discovery issues with the Campaign. Judge Kendall set an initial discovery schedule beginning on April 18, 2019, extended it several times, and ultimately set fact discovery to close on February 28, 2020 – the day that plaintiffs filed the instant motion to compel.[2] (Dckt. ##45, 52, 59, 74).

Parties and non-parties are not on the same footing during discovery. Before seeking discovery from a non-party like East Lake, a litigant must first attempt to obtain the discovery from another party in the lawsuit if it appears that the party would have the information that the litigant seeks. If the litigant fails to obtain the information from the other party, the litigant must provide a reasonable explanation for why it was unable to do so. In this case, plaintiffs do not contend that the Campaign is unable to produce the records relating to the South Side office; rather, they simply assert that the Campaign has failed to produce the records. There is a fundamental difference between arguing that the Campaign was "unable to produce the requested documents" and "asserting that [the Campaign] should have produced the requested documents

---

[2] After plaintiffs filed their motions to compel subpoena responses, the District Court again extended fact discovery through March 27, 2020 but only as it concerned the issues raised in plaintiffs' motions. (Dckt. #96).

14

but failed to do so." *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *4 (N.D.Ill. Aug. 17, 2015). "A plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information." *Id.*; *Nachurs Alpine Sols. Corp. v. Nutra-Flo Co.,* No. 15-CV-4015-LTS, 2017 WL 1380460, at *6 (N.D.Iowa Apr. 17, 2017) (same). Accordingly, "[a] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Tresona*, 2015 WL 4911093, at *3.

### C. Plaintiffs Should Pay East Lake's Fees and Expenses

East Lake also asks the Court to require plaintiffs to pay their attorney's fees and expenses incurred in responding to the motion to enforce the subpoena against East Lake. Rule 45(d)(1) provides:

> ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required *must enforce this duty and impose an appropriate sanction*--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed.R.Civ.P. 45(d)(1) (emphasis added). Thus, sanctions are appropriate when there is insufficient evidence to show that the issuing party "took reasonable steps to ensure the subpoena would not result in an undue burden." *Elliot v. Mission Tr. Servs., LLC*, No. 14 C 9625, 2015 WL 1567901, at *6 (N.D.Ill. Apr. 7, 2015); *see also Am. Soc. of Media Photographers*, 2013 WL 1883204, at *6.

Plaintiffs have not provided evidence that they took any measures to reduce the burden of production on East Lake. As outlined above, plaintiffs did not fully pursue their opportunity to

obtain the subpoenaed materials from the Campaign before issuing their subpoena to East Lake, the subpoena they served was facially overbroad, and they failed to meet and confer with East Lake as required by Local Rule 37.2 after receiving the February 19, 2020 letter from its counsel. The latter fact is particularly significant because the concerns raised by East Lake's counsel should have alerted plaintiffs to the fact that their subpoena was problematic for a number of reasons. Had plaintiffs followed Local Rule 37.2, they would have either modified the subpoena (as they have belatedly attempted to do in their motion) or withdrew it and East Lake would have had no need to incur the cost of filing its response/cross-motion to quash. Under these circumstances, it is appropriate for plaintiffs to pay the reasonable costs that East Lake incurred in filing its opposition/cross-motion to quash. *See, e.g., Am. Soc. of Media Photographers*, 2013 WL 1883204, at *6 (awarding fees and expenses in connection with a successful motion to quash a subpoena).[3]

## CONCLUSION

For these reasons, plaintiffs' motions to compel subpoena responses [Dckt. ##82, 83] are denied, and non-party East Lake's motion to quash [Dckt. #101] is granted.

ENTER:

**Hon. Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: April 22, 2020**

---

[3] The Court notes that costs awarded do not include the costs that East Lake incurred in preparing its February 19, 2020 letter. Had plaintiffs withdrew their subpoena after receiving the February 19 letter, the letter indicates that East Lake would have let the matter drop without seeking any relief from the Court. (Dckt. #82 at Ex. 2) (noting that East Lake would seek sanctions against plaintiffs under Rule 45(d)(1) "if it has to move to quash the Subpoena").

16